BEAVER LAKE ASSOCIATON, A NEBRASKA NONPROFIT
CORPORATION, ET AL., APPELLEES, V. BEAVER LAKE
CORPORATION, A NEBRASKA CORPORATION, ET AL.,
APPELLANTS, IMPLEADED WITH ALBERT SCHMUECKER
ET AL., APPELLEES.

264 N. W. 2d 871

Filed April 19, 1978.   No. 41476.

Peter E. Marchetti of Nelson, Harding, Marchetti, Leonard & Tate, for appellants.

James F. Kasher of Zweiback, Brady, Kasher, Festerson & Pavel, and Herbert K. Elworth of Casey & Elworth for appellees Beaver Lake Association et al.

Heard before WHITE, C. J., BOSLAUGH, CLINTON, and WHITE, JJ., and COLWELL, District Judge.

CLINTON, J.

This is an action for declaratory judgment seeking a determination that certain bylaws of the Beaver Lake Association pertaining to the right of the Beaver Lake Corporation to name a majority of the directors of the association are null and void; to enjoin the defendants from interfering with amend-

ment of the bylaws; to declare the rights of the parties with respect to the operation and control of the association: and to declare that certain of the parties are proper members of the board of directors of the association and that certain other parties to this action have no authority to act as directors. After trial the court granted the relief requested. The Beaver Lake Corporation (hereinafter Corporation) appealed from the judgment and argues the following assignments of error: (1) The trial court erred in declaring that the bylaws were void as against public policy. (2) Declaratory judgment is not an appropriate remedy in this case. (3) The Beaver Lake Association (hereinafter Association) was not properly authorized to bring the action. (4) The individual plaintiffs are not real parties in interest and there is a defect in the parties plaintiff. We affirm.

Certain background information identifying the parties and their relationship to the events which give rise to this action is necessary to an understanding of the issues. Corporation, as owner, became the developer of a residential and recreational area in Cass County, Nebraska, known as Beaver Lake. It caused the development to be platted into 2,000 lots, constructed a dam, built roads, installed a water and sewer utility system, and constructed a club house. It then engaged in the sale of lots. It caused Association to be incorporated and certain bylaws to be adopted. All purchasers of lots became members of Association by virtue of provisions in the purchase contracts and in the bylaws.

The purpose of Association was to "acquire, hold, use, operate, provide, and maintain utility and recreational facilities, areas, equipment and services" for the benefit of the members. The operation and maintenance of streets, utilities, lake, club house, and other common areas was financed by assessment against members pursuant to provisions of the bylaws.

After many of the lots were sold and a substantial number of homes built by purchasers, Corporation became insolvent. In lieu of foreclosure it conveyed to its mortgagee the unsold lots, the utilities system, and certain other common areas.

The original board of directors of Association consisted of three persons, all associated with Corporation. Later, pursuant to an amendment to the bylaws, the board of directors was increased to seven, consisting of three purchasers of lots elected by the members, and four persons named by Corporation. It is the provisions of the bylaws which enable Corporation to control the board of directors which is the subject of attack in this action.

The two individual plaintiffs are lot owners and members of Association and their standing as plaintiffs is challenged here. Three of the individual defendants are lot owners, members of Association, and members of the board of Association elected by the members. Four of the individual defendants are persons named to the board of Association by Corporation. The other four individual defendants are lot owners, members of Association, and persons elected to the board by the members as replacements for the four named by Corporation. It is the status of the latter eight "directors" which is at issue here.

Among other things the petition alleges as follows: That part of the overall plan of development of the Beaver Lake subdivision was the ultimate ownership and operation of the utilities and other common areas by Association after acquisition from Corporation. On about October 10, 1975, Corporation proposed to have Association take over the utilities and common areas; that negotiations for the takeover reached an impasse; and that the Corporation has now conveyed all its interest in the subdivision, including unsold lots, utilities, and common areas, and no longer has any interest in Beaver Lake.

It further alleges that the following is the substance of bylaws adopted by the original board of directors:

"i.   Article III Section 2 provides that beginning in 1975, the Board of Directors shall consist of seven persons, three of whom shall be elected by the regular members and four of whom shall be appointed by Beaver Lake Corporation.   Beaver Lake Corporation designees need not be members while directors elected by Regular Members must be members of the Association;

"ii.   Article III Section 3 provides that any vacancy in a directorship previously filled by Beaver Lake Corporation shall be filled by a new appointment by Beaver Lake Corporation.   Other vacancies may be filled by remaining directors.

"iii.   Article XI Section 4 provides that a lien for membership charges may be cancelled by application of Beaver Lake Corporation if it becomes an owner of a lot for which membership charges are delinquent.

"iv.   Article VII provides for amendments to the By-Laws and states that in 'no event may the By-Laws be amended or repealed, nor may any By-Laws be adopted either by the Board of Directors or by the Regular Members, if such changes would affect any of the rights of Beaver Lake Corporation, unless Beaver Lake Corporation shall give written consent thereto'."

The petition further alleges that Corporation has not performed its obligations under contract with Association and with the members; that because of the conveyance by Corporation in lieu of foreclosure because of an inability to resolve the issue arising from the alleged failure of the corporation to fulfill its contractual obligation to Association and the members, "a conflict of interest has arisen between the Plaintiff Association and those directors who

have been appointed to its Board of Directors by Defendant, Beaver Lake Corporation.''

It further alleges that on May 16, 1976, the members of Association held a meeting for the purpose of electing and did elect four members of Association as directors to replace the four named by Corporation; that Association had been unable to function because of the failure and refusal of the members of the board named by Corporation to participate in board action and Association had on that account been unable to muster a quorum and to carry out its purposes; that a separate mortgage made by Corporation covering the club house was threatened with foreclosure; and that utilities services were in danger of being terminated.

A review of the bill of exceptions shows that the evidence supported the allegations of the petition. A more detailed statement of certain facets of the evidence will be made as the issues are discussed.

The record discloses that on October 10, 1975, Corporation offered to sell to Association the water system for the sum of $1,075,476 and to give credit against the purchase price for the mortgage on the club house and incomplete work on common areas, roads, and utilities in the amount of $111,660. Under this proposal, common areas would be conveyed to Association and Corporation would cause the four directors named by it to resign. The proposal was not accepted. In July 1976, Corporation made an amended offer which included sale of the water system for $750,000, conveyance of the common areas, payment to Corporation by Association of unpaid utilities charges, and an exchange of mutual releases of all obligations. In connection with the latter matter, the record shows that Association and its members asserted claims for breach of contract against Corporation for various items allegedly founded on contract which included an inadequate sewage system, incomplete work in the common

areas, repair of dam, damages on account of an undisclosed agreement to furnish utility services to an adjacent developer, and sale of lots without provision for payment of a sewer use fee of $900 as contained in contracts for purchase of lots sold earlier. Corporation asserted a claim against Association for water service. The parties were unable to come to any agreement.

During the period these negotiations were taking place the directors named by Corporation constituted a majority of the board. While they did not vote on matters involving the settlement, there existed on the board no clearly legal quorum. Ultimately the Corporation directors absented themselves from meetings. An impasse existed. A primary factor in the impasse was Corporation's insistence upon mutual releases as an absolute condition of the sale of the water service facilities to Association. The absence of a quorum of the directors cast a cloud upon routine corporate action of the board in maintenance of the common properties and payment of routine bills.

The status of the four directors named by Corporation and the four "directors at large" chosen by the members of Association to replace the former depends upon the resolution of the bylaw issue.

The position of Association and its member plaintiffs is that the previously mentioned bylaws are void because contrary to public policy. Corporation and the directors named by it point out that there is nothing in the Nebraska Nonprofit Corporation Act under which Association was organized, nor in any other statutes, nor in decisions of this court, which make agreements for the naming of directors in this fashion illegal. It is also pointed out that this provision existed when each of the members joined Association by purchase of a lot.

No statute in this state governs the creation and management of homeowner associations. There

are, however, provisions for association of coowners pertaining to condominium ownership. §§ 76-802 (4), 76-814, and 76-815, R. R. S. 1943. None of the parties have been able to cite to us any other authority directly on point and we have discovered none.

The concept of public policy, except as embodied in Constitutions and statutes, is ill defined. At 17 C. J. S., Contracts, § 211, p. 1015, we find the following: "It is perhaps correct to say that public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good. . . ." In Custer P. P. Dist. v. Loup River P. P. Dist., 162 Neb. 300, 75 N. W. 2d 619, we defined contracts against public policy as those which tend to be injurious to the public, or against the public good. In that case we held that a contract by a public utility which would have prevented it from carrying out some of its public obligations for a period of 26 years was void as against public policy.

Courts should be cautious in holding contracts void on ground of public policy and before they do so prejudice to the public interest should clearly appear. Smith v. Du Bose, 78 Ga. 413, 3 S. E. 309; Howard v. Adams, 16 Cal. 2d 253, 105 P. 2d. 971.

We find, for reasons hereinafter set forth, that while the provision of the bylaws giving Corporation authority to appoint a majority of the board of directors of Association were not void ab initio as against public policy, they became against public policy and void when Corporation sought to apply them in its own private interests and against the public interest represented by the functions which Association performed. The reasons are these: (1) It is apparent that Association's purpose was the performance of quasi-municipal functions. It operated a sewage and water system, maintained streets, provided security, cared for the common areas, and collected assessments from its members to pay for those func-

tions. Its purpose and function are analogous to those of a condominium coowners' association, or a homeowners' association. § 76-801 et seq., R. R. S. 1943; Hyatt, Condominium and Home Owner Associations: Formation and Development, 24 Emory L. J. 977. (2) Corporation, on the other hand, performed only a private function in its own and its stockholders' pecuniary interest. When it conveyed the utilities, common areas, and the unsold lots in lieu of foreclosure, it no longer had any private interests in the property to protect. (3) It did have interests which conflicted with the interests of Association and its members and it did in fact exercise its control over the board of directors of Association for its own private purpose as against the quasi-municipal functions performed by Association. (4) An impasse existed which could be resolved only by terminating Corporation's control of the board of Association.

We hold that a provision in a bylaw which gives a developer control of the board of directors of a homeowners' association, even though valid initially, may be contrary to public policy and become void when used to defeat the quasi-municipal functions of a homeowners' association and in the aid of conflicting private purposes of the developer. Each such case will necessarily have to be considered on its own facts.

Corporation's contention that declaratory relief is not an appropriate remedy in this case and that Association and its members are relegated to a dissolution of the corporation under the provisions of section 21-1953 et seq., R. R. S. 1943, is not well taken for the reason that dissolution does not in this case afford an equally serviceable remedy. As we have pointed out, Association was, in its limited sphere, performing a quasi-municipal function. Interruption of that function by dissolution proceedings, distribution of assets, and reincorporation would not be

in the public interest and does not under the facts before us afford a method of speedily having the issue determined. The giving of such a speedy remedy is one of the purposes of declaratory relief. Stewart v. Herten, 125 Neb. 210, 249 N. W. 552.

Corporation also argues that an action for a declaratory judgment is not a proper remedy where it will not terminate the controversy. The controversy in this case is who is entitled to control Association. The declaratory judgment does resolve that issue and ends that controversy. The conflicting claims of the parties in other matters were not in issue for decision in this case under the pleadings and were not tried. Those are collateral issues and must be decided in another action.

Corporation's contentions (3) and (4) fall with the resolution of the issue on the validity of the bylaws.

The judgment of the District Court is in all respects affirmed.

AFFIRMED.