KENNETH MUELLER ET AL., APPELLANTS, V. UNION PACIFIC RAILROAD, A CORPORATION, ET AL., APPELLEES.
371 N.W.2d 732

Filed August 9, 1985.   No. 84-932.

John P. Fahey of Dowd, Fahey, Dinsmore & Hoffman, for appellants.

John P. Mullen of Gaines, Otis, Haggart, Mullen & Carta, and Barbara W. Zandbergen, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiffs-appellants, Kenneth Mueller, Robert A. Kirk, Samuel F. Irwin, and Lance R. Copeland, sued defendants-appellees, Union Pacific Railroad, a corporation, E.R. Brittenham, C.W. Schaffer, Jr., and D.C. McManigal, for the wrongful termination or change of their employment relationships with the defendant railroad. Defendants successfully moved for a summary judgment dismissing plaintiffs' action. (Although the transcript contains a motion for summary judgment on behalf of the defendant railroad only, the trial court's judgment order refers to the "motion of defendants for summary judgment." (Emphasis supplied.) In addition, the briefs filed in this court represent that defendants filed for summary judgment. Moreover, each of the defendants joined in a stipulation for extension of a brief day and joined in a brief as appellees. We therefore treat the matter as if each of the defendants has filed a motion for summary judgment.) Plaintiffs assign as error (1) the failure to recognize a public policy exception to the termination-at-will rule, (2) the determination that alleging a breach of an agreement not to retaliate for revelations of wrongdoing by others fails to state a cause of action, and (3) the determination that alleging misrepresentations as to the consequences of making such revelations fails to state a cause of action. We affirm in part and in part reverse and remand for further proceedings as to the plaintiff Copeland only against the defendant railroad solely.

## POSTURE OF CASE

The record before us consists only of the pleadings. Therefore, the posture of the case is such that we determine only whether plaintiffs' amended petition states a cause of action under any of the theories pled on behalf of one or more plaintiffs against any one or more of the defendants. See, *Moore v. American Charter Fed. Sav. & Loan Assn.*, 219 Neb.

793, 366 N.W.2d 436 (1985); *Snyder v. Nelson*, 213 Neb. 605, 331 N.W.2d 252 (1983). If it does not, the trial court's judgment must be affirmed. If, on the other hand, the petition does state a cause of action under any theory pled, the trial court's judgment must be reversed, for the party who moves for summary judgment has the burden of establishing that there exists no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom, as well as the burden of establishing that the movant is entitled to judgment as a matter of law. *Moore v. American Charter Fed. Sav. & Loan Assn., supra*; *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985).

Viewed in another way, the motion for summary judgment in this case is actually a motion for judgment on the pleadings, which is properly granted when it appears from the pleadings that only a question of law is presented. Like a demurrer, a motion for judgment on the pleadings admits the truth of all well-pleaded facts in the opposing party's pleadings, together with all reasonable inferences to be drawn therefrom, and the moving party admits, for the purpose of the motion, the untruth of his own allegations insofar as they have been controverted. On such a motion the court may consider all the pleadings and give judgment for the party entitled thereto. *Kent v. Insurance Co. of North America*, 189 Neb. 769, 205 N.W.2d 532 (1973); *Board of Trustees of York College v. Cheney*, 160 Neb. 631, 71 N.W.2d 195 (1955). The making of a motion for judgment on the pleadings is not, however, a waiver of the right to trial of an issue of fact. *Wittler v. Baumgartner*, 180 Neb. 446, 144 N.W.2d 62 (1966), *overruled on other grounds*, *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 283 N.W.2d 12 (1979).

The record in this case is such that either a motion for summary judgment or for judgment on the pleadings explores the same ground and reaches the same destination.

## FACTS AS PLED

Mueller, Kirk, and Irwin, current employees of the railroad, and Copeland, a former railroad employee, allege in their amended petition that they worked as special agents or guards

in the railroad's security and special services department and were answerable to Brittenham, Schaffer, and McManigal. Sometime in early 1982, another railroad employee, having been assured by the railroad's comptroller that "no one would lose their jobs," informed the railroad's internal auditing department, which investigates improprieties by railroad employees, that plaintiffs had information concerning the fraudulent misappropriation of railroad funds and services by their supervisors. Thereafter, plaintiffs were assured they need fear no retaliation and were questioned about the alleged misconduct of their supervisors.

Relying on those assurances, which are alleged to have been known to be untrue or made with reckless disregard of the truth, plaintiffs revealed the alleged misappropriation of railroad funds by McManigal and of funds and services by Brittenham.

Subsequently, "some" of the plaintiffs, we are not told who, began to experience retaliation in that their hours of employment were changed. Plaintiffs then talked with one of the vice presidents of the railroad and advised him of the retaliation and of the fear for their jobs. Plaintiffs also revealed to the vice president, among other things, that Brittenham required his employees to make personal contributions to certain candidates for public office, for which they were reimbursed by misrepresenting the expenditures as other legitimately reimbursable items on their expense accounts. Plaintiffs conclude that this practice prevented the railroad from properly reporting corporate campaign contributions, in violation of the public policy of the State of Nebraska as expressed by the Nebraska Political Accountability and Disclosure Act, Neb. Rev. Stat. §§ 49-1401 et seq. (Reissue 1984).

Plaintiffs further allege that they received assurances from the vice president that they need not worry about retaliation or loss of employment. The petition does not state whether these assurances were given before or after their revelations. In any event, shortly after the revelations, Copeland was discharged from employment by Schaffer. In addition, Mueller was advised his job might be abolished; Kirk was advised his job

would be abolished and he would be transferred to some unknown destination; and Irwin was advised his job was abolished and he was being transferred to Seattle. The petition does not allege who made the foregoing statements to Mueller, Kirk, and Irwin, nor does it allege that those threatened changes in the employment conditions of those three plaintiffs have in fact been made.

According to the operative petition, apparently after plaintiffs had made at least some of their revelations, the president of the railroad sent a letter to all railroad employees advising that it was their obligation to report to the auditing department any violations of the railroad's policy concerning business conduct and that said reports would be kept confidential.

Each defendant generally denied plaintiffs' allegations except those relating to the identity and employment of the plaintiffs, the individual defendants, and others by the railroad.

## THEORIES OF RECOVERY

Based on the foregoing allegations, Copeland seeks reinstatement, backpay, restoration of seniority, and other benefits. Mueller, Kirk, and Irwin pray for an injunction preventing a change in their employment conditions. These reliefs are sought on the basis of three alternative theories: (1) that the public policy of this state forbids termination of or any change in their employment status, (2) that there was created by the assurances given plaintiffs an agreement that their employment would be neither terminated nor changed, and (3) that there were misrepresentations such as to require that the reliefs sought be granted.

Mueller, Kirk, and Irwin seek to keep the threatened changes in their employment from being made. An injunction, however, is an extraordinary remedy which is available when there is no adequate remedy at law and where there is a real and imminent danger of irreparable injury. *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984). Ordinarily, an action for damages is the appropriate remedy for the breach of an employment contract. See *Sullivan v. David City Bank*, 181

Neb. 395, 148 N.W.2d 844 (1967). In *Dania Jai Alai Intern., Inc. v. Murua*, 375 So. 2d 57 (Fla. App. 1979), the plaintiff, a professional jai alai player, alleged his employment contract had been breached in that he had been fired without just cause, that he was unable to find other employment because all other jai alai frontons in the country had already hired their players for the season, and that he was facing deportation because employment was a condition of his visa. The Florida District Court of Appeal nonetheless reversed an injunction ordering plaintiff's immediate reinstatement with backpay pending a trial on the merits, finding that the special circumstances required for the intervention of equity did not exist. See, also, *Melzer v. Jacob Agay H.*, 426 So. 2d 1049 (Fla. App. 1983).

None of the allegations in the present case lead to the conclusion that the requisites for injunctive relief exist, and there is nothing from which we can conclude that Mueller, Kirk, and Irwin have yet been damaged in a legal sense. Accordingly, we determine without further analysis that those three plaintiffs have stated no cause of action, and the trial court's judgment of dismissal was correct as to each of them.

The remaining plaintiff, Copeland, seeks damages for breach of his employment contract from Schaffer as well as from the defendant railroad. As a general rule, where an obligation is that of a principal, a court cannot enforce the obligation against the agent as long as he or she is merely acting as agent. *Stoll v. School Dist. (No. 1) of Lincoln*, 207 Neb. 670, 301 N.W.2d 68 (1981); *Suzuki v. Gateway Realty*, 207 Neb. 562, 299 N.W.2d 762 (1980). There is nothing alleged in the case before us which takes Schaffer out of this general rule; the contract of employment, out of which the cause of action is alleged to arise, is the contract of the defendant railroad only.

Thus, Copeland states no cause of action against Schaffer, and the trial court correctly dismissed Copeland's action as to that defendant.

This leaves us only with the question of whether Copeland has stated a cause of action under any one of his three theories of recovery against the defendant railroad.

## TERMINATION AT WILL

The railroad argues that when the employment is not for a definite term and there are no contractual or statutory restrictions upon the right of discharge, an employer may discharge an employee whenever it chooses, with or without cause.

Copeland, on the other hand, argues that there exist exceptions to this general rule with respect to termination of employees at will.

### Public Policy Exception

Copeland cites numerous cases from other jurisdictions which allow actions either in tort or implied contract for wrongful discharge based on violation of public policy, and argues that this court has shown an inclination, in *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980), to adopt the public policy exception.

In *Mau* the former supervisor of a bank's mailroom sought damages for what he alleged was his wrongful discharge from the bank. Mau had failed to mail some 300 pension checks issued by the bank's trust department. This court found that such failure constituted "good cause" for his termination. The opinion also noted that Mau's employment relationship was terminable at will and discussed the exception applied in other jurisdictions to the general rule applicable to the termination of such a relationship:

> We recognize, however, that the "employment at will" rule is not, in some jurisdictions, an absolute bar to a claim of wrongful discharge. In a number of jurisdictions, an exception to the "terminable at will" rule has been articulated in recent years. Under this exception, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy. [Citations omitted.]

> So far as we are able to ascertain, Nebraska has not adopted this exception to the present time. Assuming *arguendo*, however, that such an exception were to be recognized in this jurisdiction, it is clear in this case that the plaintiff has failed in his burden to prove that his discharge was violative of a public policy of this state. We

have held that "[c]ourts should be cautious in holding contracts void on ground of public policy and before they do so prejudice to the public interest should clearly appear." *Beaver Lake Assn. v. Beaver Lake Corp.*, 200 Neb. 685, 691, 264 N.W.2d 871, 875 (1978).

*Id.* at 316, 299 N.W.2d at 151-52.

Although the court referred to the public policy exception of other jurisdictions and distinguished the *Mau* facts from those cases in which the exception was applied by other jurisdictions, it cannot be said, contrary to Copeland's claim, that this court expressed an inclination toward any position with respect to that policy.

We have not had occasion to address this exception since *Mau*, although we have reiterated the rule applicable to at-will terminations several times. In *Alford v. Life Savers, Inc.*, 210 Neb. 441, 315 N.W.2d 260 (1982), the plaintiff sought damages for his alleged wrongful discharge. We affirmed the trial court's decision to sustain the defendant's demurrer, holding that the plaintiff did not allege any right to continued employment in his petition. The public policy exception was not at issue.

Nor was the exception at issue in *Morris v. Lutheran Medical Center*, 215 Neb. 677, 340 N.W.2d 388 (1983). In that case we again affirmed the trial court's decision to sustain the defendant's demurrer. Plaintiff brought an action for recovery of lost wages, past and future, alleging wrongful discharge of her employment. Although we found that the center's grievance procedures were applicable to plaintiff's employment relationship even though she did not have an employment contract for a specific term, we held that plaintiff failed to allege facts supporting a conclusion that her discharge was improper; consequently, an action could not lie.

Finally, in *Smith v. City of Omaha, ante* p. 217, 369 N.W.2d 67 (1985), plaintiff appealed an order of the court affirming the Omaha personnel board's decision suspending his employment, pending termination. Plaintiff contended that the board's decision was not supported by competent evidence, since his labor agreement was not in evidence. We held that it was plaintiff's burden to introduce the agreement and that absent an agreement, his employment was terminable at will.

Nor do we reach the policy issue in the present case. The only allegations which can be said to in any sense relate to that issue are the statements that Brittenham caused contributions of railroad funds to be made to certain candidates for public office in a manner which circumvented the disclosure requirements of the Nebraska Political Accountability and Disclosure Act. Violations of such disclosure provisions constitute a Class III misdemeanor punishable by imprisonment for up to 3 months, a $500 fine, or both. Neb. Rev. Stat. §§ 28-106 (Cum. Supp. 1984) and 49-1469 (Reissue 1984). Without any undertaking to otherwise analyze the applicability of the accountability and disclosure act to the facts as alleged herein, we note that Copeland asks us to impute Brittenham's criminal acts to the railroad.

While a corporation may be convicted of certain types of criminal acts committed by its agents, even if the acts have been forbidden by the corporation, in order to impose such criminal liability against the corporation, the agent must have been acting within the scope of his or her authority. *Standard Oil Company of Texas v. United States*, 307 F.2d 120 (5th Cir. 1962); *United States v. Thompson-Powell Drilling Company*, 196 F. Supp. 571 (N.D. Tex. 1961); *Vulcan Last Co. v. State*, 194 Wis. 636, 217 N.W. 412 (1928).

The allegations with respect to political contributions do not state whether the candidates were of Brittenham's choice or the railroad's choice, nor is there anything from which it can be inferred that even if the latter were the case, it was within Brittenham's authority to seek contributions for the railroad's candidates. Brittenham's employment as a director or manager of the railroad's security and special services department does not, without further description, imply in him an authority to make political decisions for the railroad.

Thus, even if this jurisdiction were to adopt a public policy exception to the termination-at-will rule, and even if the facts as alleged were to come within such an exception, matters we do not decide, no cause of action would have been stated against the railroad on this alternative theory.

Agreement Exception

Although Copeland characterizes his second alternative theory as one in implied contract, he argues in fact that an express agreement existed that revelations by him of wrongdoing by others would not result in retaliation.

In so arguing he relies upon our opinion in *Morris v. Lutheran Medical Center, supra*, discussed earlier. The opinion does indicate that compliance with the written grievance procedure was promised prior to the oral agreement of employment and that the procedure therefore imposed substantive limits to the termination-at-will rule. Morris failed because she did not allege a material fact relating to the procedure as applied to her discharge. Thus, Copeland correctly argues that under some circumstances the termination-at-will rule is subject to modification by promises outside the employment agreement itself.

Neither assurances given to others nor assurances given to Copeland after he made revelations can form the basis of his express agreement theory. However, the allegation that Copeland was assured by those investigating the allegations of wrongdoing that he need not fear retaliation, in reliance upon which he acted, brings into play an enforceable promise to vary the termination-at-will rule to the extent that liability for damages may be imposed for the breach of that promise. Unlike the question of Brittenham's authority to solicit funds for political candidates, the fact that employees of the railroad were investigating wrongdoing implies their authority to promise that revelations of wrongdoing by others would not result in retaliatory action. Apparent authority is such authority as the agent seems to have by reason of the authority he actually has. See *Stewart v. Spade Township*, 157 Neb. 93, 58 N.W.2d 841 (1953). A principal is bound by, and liable for, the acts which an agent does within his or her actual or apparent authority. See *Bury v. Action Enterprises, Inc.*, 197 Neb. 38, 246 N.W.2d 724 (1976).

Thus, it must be concluded that Copeland has stated a cause of action against the railroad on his express agreement theory, and the trial court's dismissal of that theory as to the plaintiff Copeland against the railroad was erroneous.

## Fraud Exception

Lastly, Copeland argues that he was fraudulently induced to make the revelations. Having already established in the foregoing discussion that such representations as were made by the railroad's agents were the representations of the railroad, we move on to a consideration of the nature of those representations.

The elements of fraud are (1) a false representation of material fact, (2) knowledge that the representation was false or made in reckless disregard as to its truthfulness or falsity, (3) an intent to induce another to act, (4) a justifiable reliance on the representation, and (5) injury or damage resulting from such reliance. See, *Cummings v. Curtiss*, 219 Neb. 106, 361 N.W.2d 508 (1985); *Havelock Bank v. Woods*, 219 Neb. 57, 361 N.W.2d 197 (1985); *Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859 (1983).

Copeland has expressly alleged the existence of elements (2), (4), and (5), and the existence of element (3) may be fairly inferred from his operative petition as a whole.

The question is whether he has alleged the existence of element (1). Asked another way, Can fraud be predicated upon a future event? The answer is yes, under certain circumstances.

The rule that fraud cannot be based on predictions or expressions of mere possibilities in reference to future events, *In re Estate of Hesemann*, 214 Neb. 842, 336 N.W.2d 568 (1983), is subject to the well-known exception that fraud may be predicated on a representation concerning any event in the future or acts to be done in the future if such representations are falsely and fraudulently made with an intent to deceive. *Smith v. Wrehe*, 199 Neb. 753, 261 N.W.2d 620 (1978); *Central Constr. Co. v. Osbahr*, 186 Neb. 1, 180 N.W.2d 139 (1970).

In other words, as applied to the facts of this case, fraud may be predicated on the representation that an event which is in the control of the maker will, or will not, take place in the future if the representation as to the future is known to be false when made, or is made in reckless disregard as to its truthfulness or falsity and the other elements of fraud are present.

Since retaliation in the future, as alleged, was an event in the defendant railroad's control when the representation was made

and the other elements of fraud have been alleged, the trial court erred in dismissing Copeland's fraud theory against the railroad.

## DECISION

The judgment of the trial court is therefore affirmed as to the plaintiffs Mueller, Kirk, and Irwin with respect to all defendants and as to the plaintiff Copeland with respect to the defendants Brittenham, Schaffer, and McManigal. The judgment of the trial court is reversed as to the plaintiff Copeland against the defendant railroad only, and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.