Larry N. WISEHART, Plaintiff–
Appellant,

v.

Michael MEGANCK and Vectra Bank
Colorado, NA, Defendants–
Appellees.

No. 01CA1327.

Colorado Court of Appeals,
Div. I.

Aug. 15, 2002.

Rehearing Denied Oct. 10, 2002.*

Certiorari Denied March 24, 2003. **

* WEBB, J., would Grant.

** Justice RICE does not participate; Cheif Justice
MULLARKEY and Justice BENDER would grant
as the following issue:

Whether the court of appeals erred when it af-
firmed the trial court's summary judgment order
rejecting the plaintiff's fraud claim.

William C. Danks, Denver, Colorado, for Plaintiff–Appellant.

McNamara Law Firm, P.C., John N. McNamara, Jr., Griffith A. Kundahl, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge CASEBOLT.

In this civil case arising from termination of an employment relationship, plaintiff, Larry N. Wisehart, appeals the summary judgment in favor of defendants, Vectra Bank Colorado, NA and Michael Meganck, dismissing his claims for fraudulent misrepresentation and concealment. We affirm.

Plaintiff worked for the bank as a loan officer in an at-will relationship. Bank policy required him to obtain the approval of other bank officers when processing certain loans. While the bank's loan policy required written approval of the officers to be obtained before any closing, in practice the approvals were sometimes obtained afterwards.

On the day before the scheduled closing of a particular loan, plaintiff met with a senior loan officer to obtain his approval. That officer told plaintiff that he needed more detailed information regarding the loan and requested plaintiff to provide it. When plaintiff returned with the requested information later that afternoon, the officer had departed and could not be located.

Following the meeting with plaintiff, and without receiving the requested information, the officer informed another bank employee that he was not going to approve the loan. Nevertheless, in fact, neither the officer nor the bank had any objection to the loan.

Plaintiff's superiors knew the loan closing date well in advance and specifically were aware on the date of the closing that plaintiff intended to proceed with it. Despite opportunities to do so, no one informed plaintiff that the bank officer did not intend to give his approval.

While plaintiff was attending the closing the next day in another city, the bank issued his final paycheck in anticipation of termination. When plaintiff returned to the bank, Meganck, one of his supervisors, informed him that he was being terminated for failing

to obtain the required written approvals before closing.

Plaintiff then initiated this action asserting claims for fraudulent misrepresentation and concealment against the bank and Meganck, essentially alleging that defendants had fraudulently set him up to be terminated. Plaintiff further alleged that the bank's stated reason for termination masked a plan to replace employees like himself who had been long-term employees of another financial institution that had merged with the bank.

Contending that Colorado does not recognize a claim of fraud in the employment at will context, defendants filed a motion for summary judgment. The trial court held, inter alia, that plaintiff's claims, even though couched in terms of fraud, essentially asserted a claim for wrongful termination, and the fact that his termination was achieved through fraud did not change the true nature of the claims. The court concluded that, even though defendants may have created a reason to terminate plaintiff's employment, that action did not give rise to a claim because defendants were free to terminate him without any reason whatsoever. Hence, the court dismissed plaintiff's claims, and this appeal followed.

I.

Plaintiff contends the trial court incorrectly held that he could not pursue his fraud claims because he was an at-will employee. He asserts that employers should be subject to ordinary fraud rules that apply generally in all settings. Defendants assert the trial court correctly held that allowing a fraud claim under these circumstances would improperly undermine the employment at will doctrine. We agree with defendants.

We review summary judgments de novo. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995); *Mohr v. Kelley*, 8 P.3d 543 (Colo.App.2000).

A reviewing court applies the same standards as the trial court in determining whether summary judgment is warranted. *Smith v. Boyett*, 908 P.2d 508 (Colo.1995). Summary judgment is appropriate only if the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board, supra.* The nonmoving party is also entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts. *City of Aspen v. Marshall*, 912 P.2d 56 (Colo. 1996).

A.

■ In Colorado, an agreement of employment that is for an indefinite term is presumed to be at will. Either the employer or the employee may terminate at-will employment at any time with or without cause, and such termination generally does not give rise to a claim for relief. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo.1992); *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987).

The at-will nature of the employment relationship reflects a matter of public policy. *Crawford Rehabilitation Services v. Weissman*, 938 P.2d 540 (Colo.1997). The at-will employment doctrine promotes flexibility and discretion for employees to seek the best position to suit their talents and for employers to seek the best employees to suit their needs. By removing encumbrances to quitting a job or firing an employee, the at-will doctrine promotes a free market in employment analogous to the free market in goods and services generally. *See Mackenzie v. Miller Brewing Co.*, 241 Wis.2d 700, 623 N.W.2d 739 (2001).

At the same time, strict application of the at-will doctrine may invite abuse and lead to injustice. Accordingly, legislation and the common law have restricted application of the at-will doctrine to balance the interests of employers and employees. *See Martin Marietta Corp. v. Lorenz, supra.* For example, certain federal and state statutes have created private claims for relief for wrongful discharge based on discrimination with respect to race, color, gender, national origin, ancestry, religious affiliation, disability, and age. State statutes also permit such claims in

cases of termination resulting from an employee engaging in lawful activity off premises during nonworking hours, responding to a jury summons, and certain activities of "whistleblowing." *See Crawford Rehabilitation Services v. Weissman, supra.*

■ Colorado also recognizes a claim for relief for wrongful discharge in violation of public policy. This judicially crafted exception restricts an employer's right to terminate when the termination contravenes accepted and substantial public policies as embodied by legislative declarations, professional codes of ethics, or other sources. *Rocky Mountain Hospital & Medical Service v. Mariani,* 916 P.2d 519 (Colo.1996)(approving wrongful discharge claim based on accountant's refusal to violate code of professional conduct); *see also Martin Marietta Corp. v. Lorenz, supra* (proscribing termination for refusing to engage in illegal conduct); *Johnson v. Jefferson County Board of Health,* 662 P.2d 463 (Colo.1983)(government employer may not terminate at-will employee for exercising right of free speech); *Jones v. Stevinson's Golden Ford,* 36 P.3d 129 (Colo.App.2001)(approving wrongful discharge claim based on employee's refusal to violate Consumer Protection Act and Motor Vehicle Repair Act); *Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367 (Colo.App.1989)(employer's retaliatory termination against employee for exercising right to apply for and receive workers' compensation benefits provided grounds for wrongful discharge claim).

These exceptions address societal concerns, while honoring the general rule that employment affects private interests, and therefore parties generally are free to bargain for conditions of employment. *See Crawford Rehabilitation Services v. Weissman, supra* (claims that relate to a private contract or promise between an employer and an employee do not raise public policy concerns, other than the general interest society has in the integrity of the employment relationship).

■ Operating from the premise that parties are free to require cause for termination, Colorado also recognizes that an employer's failure to follow termination procedures contained in an employment manual can serve as the basis for a breach of contract or promissory estoppel claim. *Continental Air Lines, Inc. v. Keenan, supra; see also Schoff v. Combined Insurance Co.,* 604 N.W.2d 43 (Iowa 1999); *Mackenzie v. Miller Brewing Co., supra.*

In addition, Colorado recognizes the viability of certain other tort claims that arise around the employment relationship. *See Jet Courier Service, Inc. v. Mulei,* 771 P.2d 486 (Colo.1989)(employee owes duty of loyalty to employer that prohibits soliciting employer's customers before terminating employment); *Berger v. Security Pacific Information Systems, Inc.,* 795 P.2d 1380 (Colo.App.1990)(employee induced to enter into at-will employment by employer's concealment may pursue fraud claim); *Cronk v. Intermountain Rural Electric Ass'n,* 765 P.2d 619 (Colo.App.1988)(tortious interference claim allowed against supervisor who induced employer to exercise its at-will termination power by presenting corrupt reason).

■ To summarize, employers operating under at-will employment principles are generally free to discharge employees for any reason, even if that reason is wrong or incorrect, as long as the reason asserted does not trigger a recognized exception to the at-will termination doctrine noted above. Employees in such a relationship likewise may leave employment for any reason and at any time. Moreover, the presumption of at-will employment places the burden on the plaintiff to plead and prove circumstances that would authorize application of one of the recognized exceptions to the doctrine. *See Schur v. Storage Technology Corp.,* 878 P.2d 51 (Colo. App.1994).

Here, plaintiff's claims arise out of the termination of his at-will employment relationship under which his employer was free to terminate him any time, with or without any reason. Plaintiff's claims do not fall within any of the recognized exceptions to the doctrine of at-will employment, nor do they allege allowable theories or tort claims surrounding the employment relationship.

Moreover, plaintiff does not assert that the parties agreed to vary the at-will relationship to require cause for termination. Courts in other states have recognized claims for fraudulent misrepresentation resulting in termination when there is evidence of such an agreement in part because the presumption of at-will employment is rebuttable by evidence of a contrary agreement between the parties. *Sea–Land Service, Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647 (1982); *accord Pickell v. Arizona Components Co.,* 931 P.2d 1184 (Colo.1997)(presumption of at-will employment is rebuttable).

Here, in contrast, plaintiff specifically disavowed any contract or estoppel claim for relief, and he does not assert any agreement varying the at-will employment relationship. Further, he did not plead a claim of wrongful discharge in violation of public policy.

Accordingly, unless there is another basis to allow a fraud claim under these circumstances, plaintiff's claims fail.

### B.

Plaintiff asserts that he is entitled to pursue claims that his termination resulted from fraudulent misrepresentation and concealment. He contends that an employer may not assert its right to terminate at will as a defense to a fraud claim. Plaintiff essentially asks us to recognize an exception to the at-will doctrine ·where the employer commits fraud to justify termination of an at-will employee. We decline to do so.

This is a question of first impression in Colorado. Most other courts that have considered such claims have concluded that the at-will doctrine precludes a claim for relief when fraud is the means used to effect termination. *See Salter v. Alfa Insurance Co.,* 561 So.2d 1050 (Ala.1990); *Hunter v. Up–Right, Inc.,* 6 Cal.4th 1174, 26 Cal.Rptr.2d 8, 864 P.2d 88 (1993); *Tatge v. Chambers & Owen, Inc.,* 219 Wis.2d 99, 579 N.W.2d 217 (1998); *see also Mackenzie v. Miller Brewing Co., supra* (*Tatge* holding equally applicable to intentional and negligent misrepresentation claims). *But cf. Mueller v. Union Pacific R.R.,* 220 Neb. 742, 371 N.W.2d 732 (1985).

*Salter v. Alfa Insurance Co., supra,* involved claims factually and legally similar to plaintiff's claims. In *Salter,* an insurance company instructed its agent not to investigate a particular claim. The agent complied with that instruction, but was subsequently terminated because she had failed to follow company policy requiring agents to cooperate with claims investigation. The court, noting that it did not sanction the insurance company's conduct, nevertheless recognized that the at-will doctrine permits termination for any reason, which necessarily includes grounds that are malicious or otherwise improper. The court therefore concluded that the agent's fraud claim failed as a matter of law. In its holding, the court recognized that the law will not punish a party for doing by misdirection that which it has a right to do forthrightly. *Salter v. Alfa Insurance Co., supra; see also Hunter v. Up–Right, Inc., supra.*

■ Here, while we likewise do not condone the bank's conduct, we find no basis to depart from the general rule that either party to an at-will employment contract may terminate the relationship for *any* reason, even if wrong, without giving rise to liability. *See Martin Marietta Corp. v. Lorenz, supra; Continental Air Lines, Inc. v. Keenan, supra.* Unless the plaintiff pleads and proves a recognized exception to the at-will employment doctrine, *see Schur v. Storage Technology Corp., supra,* the doctrine restrains courts from inquiring into the basis for termination and advances the value of a free market in employment for which the parties bargained.

■ We therefore decline to recognize an exception to the at-will employment doctrine for claims in which a fraud is employed to justify the termination of an at-will employment relationship. Plaintiffs' claims against the bank and Meganck therefore fail as a matter of law. *See Mackenzie v. Miller Brewing Co., supra* (at-will employment doctrine precludes recognition of fraud claims against both employer and supervisor).

The parties do not raise, and we therefore do not address, the effect, if any, of 12 U.S.C. § 24 (Fifth) (2001) on the state law claims asserted here.

## II.

Plaintiff nevertheless contends that the bank, in its role as an employer, entered into a confidential relationship with him that gave rise to a duty to communicate honestly and openly regarding termination. We disagree.

The existence of a special relationship between contracting parties may trigger a tort duty of care in addition to duties arising from the contract. *See Town of Alma v. Azco Construction, Inc.,* 10 P.3d 1256 (Colo.2000)(recognizing special relationship giving rise to tort duty of care between attorney and client, physician and patient, and insurer and insured).

However, a special relationship that would give rise to a tort duty of honesty and disclosure is not recognized in the usual employment relationship. *See Decker v. Browning–Ferris Industries,* 931 P.2d 436 (Colo.1997)(rejecting analogy of employer-employee relationship to that of insurer-in-sured); *see also Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). *But cf. Jet Courier Service, Inc. v. Mulei, supra.*

Here, the record does not suggest any departure from the usual employment relationship or any basis for a confidential relationship during plaintiff's tenure with the bank. Accordingly, we conclude the bank did not owe plaintiff a tort duty of honesty and disclosure relating to his at-will termination.

## III.

Plaintiff contends that, because the bank ostensibly terminated him for violating bank policy, and the bank has consistently maintained that his termination was for cause, we should review whether that cause was just. Essentially, he asks us to conclude that, although the bank had the right to terminate him with or without cause and for any reason, the fact that it claimed to have terminated him with cause and for a specific reason transformed the employment relationship from at will to one in which he could only be terminated for good cause. We reject this contention.

Any claim for relief arising because the bank terminated plaintiff's employment without cause or a valid reason requires as a predicate an agreement between the parties that cause or a valid reason is necessary for termination. Such a claim would also necessarily sound in contract. *See Continental Air Lines, Inc. v. Keenan, supra* (employment policy termination procedures imply existence of agreement to vary at-will relationship). To permit plaintiff to inquire into the cause for his termination in the guise of a tort claim would undo the parties' essential contractual bargain that there need be no such cause. *See Town of Alma v. Azco Construction, Inc., supra* (tort action is not permitted to enforce contractual obligations); *Mackenzie v. Miller Brewing Co., supra* (rejecting fraud claim in context of at-will employment on basis that it would envelop contract law with tort law).

At-will employment confers upon employer and employee the right to terminate with cause or without cause. The fact that the party that terminates the relationship claims that it had a good reason for doing so does not alter the nature of the relationship, nor does it give rise to a claim for relief.

## IV.

Plaintiff contends that *Berger v. Security Pacific Information Systems, supra,* compels a different result. We disagree.

In *Berger,* a division of this court recognized a claim for fraudulent inducement against a former employer that had misrepresented its financial condition and business prospects to lure the plaintiff to accept an employment offer. The employer later terminated the plaintiff's employment. As the *Berger* division noted when the defendant asserted the right to terminate at will, a fraudulent inducement claim does not implicate the at-will employment doctrine. In such an instance, the fraud is not related to the at-will termination right. Rather, the fraud arises prior to employment, before the at-will relationship is formed. *See Bernoudy v. Dura–Bond Concrete Restoration,* 828 F.2d 1316 (8th Cir.1987).

Other courts permit claims of fraudulent inducement in the at-will employment context while forbidding claims of fraud used to effect an at-will termination. *See Kidder v. AmSouth Bank*, 639 So.2d 1361 (Ala.1994); *Lazar v. Superior Court*, 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996); *see also Mackenzie v. Miller Brewing Co., supra* (dicta approving fraudulent inducement claim).

Accordingly, we reject this contention.

## V.

■■■ To the extent plaintiff contends that his claims do not relate to his termination, but merely seek to hold his employer liable for acts of fraud that are generally actionable, we disagree.

Plaintiff describes defendants' fraudulent statements and acts as having been taken to set him up for termination. Plaintiff further asserts that he would not have acted as he did in reliance on defendants' fraud if he had known it would lead to his termination. *See Hunter v. Up–Right, Inc., supra* (plaintiff claiming fraud as means to effect termination fails to allege detrimental reliance as a matter of law). Likewise, all plaintiff's claimed damages arise directly from termination. *See Salter v. Alfa Insurance Co., supra* (plaintiff suffers no injury as a matter of law from misrepresentation resulting in termination).

Here, plaintiff's claims definitely relate to the termination of his employment. The employer used deception to justify a termination that it was entitled to carry out without explanation or reason. Limiting our decision to these circumstances, we conclude that plaintiff may not challenge his at-will termination by asserting a fraud claim.

In light of our disposition, we need not address plaintiff's remaining contentions.

The judgment is affirmed.

Judge STERNBERG *** concurs.

Judge WEBB dissents.

*** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

Judge WEBB dissenting.

With respect, I dissent from the holding that plaintiff's nondisclosure claim depends on a "fraud exception" to the at-will employment rule. This is not a case of an employer that passively waited until it had cause to terminate an at-will employee, whether needed or not, but instead the bank allegedly resorted to fraud by nondisclosure. I find adequate support in Colorado tort law for applying basic fraud principles to plaintiff's employment relationship, despite his at-will status.

In *Berger v. Security Pacific Information Systems, Inc.*, 795 P.2d 1380 (Colo.App.1990), a division of this court upheld the fraud claim of an employee who relied on the employer's concealment of a fact that cast doubt on the longevity of their at-will relationship, without purporting to create an exception to the at-will employment rule. Both the claim in *Berger* and plaintiff's claim here share the fact that the employees suffered injury from the fraud when the employers terminated them for tainted reasons, rather than merely exercising their right to terminate without reason.

I disagree with the majority's limitation of *Berger* to fraud "not employed to effect termination." The fraud claim there arose because the employer terminated the employee for the reason that it had allegedly concealed. *Berger v. Security Pacific Information Systems, Inc., supra*, 795 P.2d at 1385 ("[The employee] did not know, when she accepted the job with SPIS, that there was a substantial risk that SPIS would discontinue [her project] in the near future.").

In my view, Colorado's recognition of a claim for tortious interference with an at-will employment contract, *see e.g., Cronk v. Intermountain Rural Electric Ass'n*, 765 P.2d 619 (Colo.App.1988), also supports plaintiff's claim here. Tortious interference involves third party misconduct. Nevertheless, I discern no reason to recognize a claim against the supervisor in *Cronk*, who induced the employer to exercise its at-will termination

§ 24–51–1105, C.R.S.2001.

power by presenting a corrupt reason concerning subordinates whom he had targeted, but here reject plaintiff's claim against the bank, which allegedly targeted plaintiff by contriving a reason for terminating him.

While the majority points to the general public policy underpinnings of the at-will rule, I do not see plaintiff as "inquiring into the *basis* for termination," which the majority correctly notes is prohibited by the at-will employment rule. Rather, plaintiff's allegations focus on the alleged cause and effect relationship between the *timing* of the bank's termination decision and its purported fraud. Thus, here as in many employment disputes, "timing is everything." *NLRB v. Joy Recovery Technology Corp.*, 134 F.3d 1307, 1314 (7th Cir.1998).

Moreover, I am persuaded by the specific public policy of protecting employees against fraud by employers. *See* § 8–2–104, C.R.S. 2001 (remedy for employees fraudulently induced to come to Colorado for work). Hence, I would allow plaintiff an opportunity to prove that, as in any fraud case, he was put in a worse position for having relied on the bank's alleged fraudulent concealment. *See generally* 37 C.J.S. *Fraud* § 41 (1943).

The background facts are undisputed: the bank acquired plaintiff's prior employer in 1998, retained him as its at-will employee, and acknowledged that he was an exemplary employee until it terminated him in 1999 for having violated credit policy. The termination memorandum read, in relevant part:

> The loan has not been approved internally according to Vectra Bank Colorado credit policy, yet you have willfully disregarded this fundamental rule and completed the transaction. You leave me no alternative but to terminate your employment at Vectra Bank *for cause* effective this date . . . .
> (emphasis supplied)

The unrefuted complaint allegations and differing reasonable inferences from undisputed facts show a viable fraudulent nondisclosure claim because: (1) the bank wanted to replace officers of the predecessor with its own people; (2) the bank took no action against plaintiff for approximately one year following the acquisition; (3) as a matter of past practice, the three signatures required by the credit policy were sometimes obtained after a loan closed; (4) the afternoon before the scheduled loan closing, the senior officer told another employee that he did not intend to sign the approval form on the loan at issue, but neither communicated this information to plaintiff nor directed anyone else to do so; (5) the senior officer's statement to plaintiff at about the same time that he wanted more information on the loan created a false impression that he had not yet decided against signing the loan approval form; (6) the senior officer intended plaintiff to close the loan the following morning in ignorance of the officer's decision not to sign; (7) given the past practice, plaintiff closed the loan in reasonable reliance on this false impression; (8) ultimately, the bank did not object to the loan; and (9) but for plaintiff's having thereby violated credit policy, the bank would not have terminated his employment at that time.

The only element of plaintiff's fraud claim disputed by the majority is detrimental reliance. However, the bank's alleged plan to replace at-will employees inherited from the predecessor with its own people could have been implemented at any time since the acquisition. Yet the bank acted only after—and then immediately after—according to plaintiff it had fraudulently orchestrated cause.

The inference that but for this contrived cause the bank would not have acted against plaintiff when it did, even though it did not need cause at all, finds support in factors beyond the bank's alleged machinations.

First, termination without cause would have left the bank at risk of litigation because of the many and somewhat unpredictable exceptions to the at-will employment rule.

Defense attorneys should not cause or allow their clients to believe in the vitality of the employment at-will doctrine. *The doctrine is so riddled with exceptions that it will rarely be the case that the termination of a particular employee does not fall within one of the exceptions.* In short, if an employer terminates an employee, *prudence dictates that the employer have a*

*good reason for the termination, which should be documented.*

Practitioner's Guide to Colorado Employment Law 2–2 (Supp.2001)(emphasis supplied).

Second, absent clear cause for termination the bank could have been exposed to a claim by plaintiff under state and federal statutes protecting even at-will employees against age discrimination, because of the implication of age bias arising from plaintiff's status as a long-term and otherwise exemplary employee who was within the protected age group.

The narrow ground on which I would sustain plaintiff's claim—that the bank obtained through fraudulent nondisclosure a basis for termination without which it would not have terminated his employment when it did— does not contravene "the value of a free market in employment," as the majority fears. Fraud has long been recognized as an exception to caveat emptor. *See, e.g., Mastin v. Bartholomew*, 41 Colo. 328, 92 P. 682 (1907).

Even if employment at will is treated as a defense under basic tort principles, a jury question exists whether the bank's alleged contrivance of a reason for termination through fraudulent nondisclosure precludes a defense based on the at-will employment rule. *Cf. First Interstate Bank v. Piper Aircraft Corp.*, 744 P.2d 1197 (Colo.1987)(fraudulent concealment of a wrongful act tolls the limitations period). *See generally* F. Harper et al., *The Law of Torts* 495 (2d ed. 1986)("Misrepresentation may also avoid a defense.").

That the bank could have terminated plaintiff's at-will employment the very next day or any time thereafter, for some other reason or even for no reason, raises a dilemma equally inherent in many Colorado cases that recognize public policy wrongful termination claims by at-will employees. This factor may limit plaintiff's damages, but should not extinguish his claim. *See Berger v. Security Pacific Info. Sys., Inc., supra*, 795 P.2d at 1385 (rejecting the argument that fraud damages should be limited because the employee had "no guarantee of continued employment," because the jury "could reasonably infer from the evidence that [the employee's]

employment would have continued for a reasonable time").

*Lazar v. Superior Court*, 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996), cited by the majority, also illustrates the importance of looking at whether the bank would have terminated plaintiff without the allegedly tainted reason. There, explaining why it had earlier rejected an employee's fraud claim in *Hunter v. Up–Right, Inc.*, 6 Cal.4th 1174, 26 Cal.Rptr.2d 8, 864 P.2d 88 (1993), the court said, "[B]ecause [the employer] had both the power *and intention* of discharging him in any event, [the employee] was no worse off for being induced by [the employer's] misrepresentation to resign." *Lazar v. Superior Court, supra*, 12 Cal.4th at 642, 49 Cal. Rptr.2d 377, 909 P.2d at 987 (emphasis supplied).

The majority correctly concludes that most courts hold the at-will doctrine precludes a claim when "fraud is the means used to effect the termination." However, the other cases on which the majority relies do not discuss the three factors whose convergence I see as precluding summary judgment here: (1) an ulterior motive for terminating the at-will employee; (2) followed by a significant delay until the employer fraudulently fabricated a reason for termination; and (3) termination soon thereafter on the basis of that tainted reason. *See Salter v. Alfa Insurance Co.*, 561 So.2d 1050 (Ala.1990); *Mackenzie v. Miller Brewing Co.*, 241 Wis.2d 700, 623 N.W.2d 739 (2001); *Tatge v. Chambers & Owen, Inc.*, 219 Wis.2d 99, 579 N.W.2d 217 (1998).

Finally, I do not share the majority's concern that accepting plaintiff's fraud theory here would unduly conflate contract claims and tort claims. *See Town of Alma v. Azco Construction, Inc.*, 10 P.3d 1256 (Colo.2000)(limiting negligence claims where the parties have a contractual relationship, but citing with approval *Brody v. Bock*, 897 P.2d 769, 776 (Colo.1995), which held, "The fact that such alleged representations constitute the substance of Bock's breach of contract claim does not require dismissal of his [fraud] claim.").

Accordingly, I would reverse the summary judgment order and allow the jury to consid-

er plaintiff's fraud claim based on why the bank terminated him when it did, rather than foreclosing that inquiry because of what the bank legally could have done much earlier, but did not do.