PRICE, ET AL. *v.* LEVIN, ET AL.

[No. 707, September Term, 1966.]

*Decided December 5, 1967.*

The cause was argued before Hammond, C. J., and Marbury, McWilliams, Finan and Singley, JJ.

*Gordon G. Power,* with whom were *Power & Mosner* on the brief, for appellants.

*Sidney Blum* for appellees.

McWilliams, J., delivered the opinion of the Court.

According to the chancellor, Jenifer, J., "the sole question before [him]" was whether the appellees (Levin) were "in violation of [certain] zoning regulations of Baltimore County [Section 409.1 to 409.5] relating to off-street parking." Holding the appellants (Price) had failed to make out a prima facie case that there was such a violation, he granted, at the close of Price's evidence, Levin's motion to dismiss. Maryland Rule 535. We are unable to agree with his appraisal of Price's evidence.

Price was entitled to have the chancellor consider the evidence and all logical and reasonable inferences deducible therefrom in a light most favorable to him. *Allen v. Steinberg,* 244 Md. 119, 223 A. 2d 240 (1966). Viewed in that light there emerges from the evidence the following facts and circumstances.

Since 1951, and perhaps before, Price has conducted an ice cream and dairy business on his property at 6005 Liberty Road, in Baltimore County. In 1961 the property adjoining to the west was sold to T. & L. Realty, Inc. (T. & L.), one of the appellees. The building T. & L. proposed to erect was of such a size as to require the off-street parking provided for in the zoning regulations. This was impossible of accomplishment by T. & L. without making use of a part of Price's land. Following discussions between T. & L. and Price a "declaration" was executed on 8 June 1961. On 31 October 1961 it was recorded. It recited the intention of T. & L. to erect "one or more buildings comprising several stores and offices" and the agreement of the parties to establish and create "certain rights of use, ingress, egress and parking in and over" a part of Price's land. The essential purpose of the instrument was to give T. & L. "parking facilities for not more than 15 automobiles" on Price's land and to allow Price's customers to park in the parking area on the T. & L. lot.

On 27 June 1961 T. & L. filed an application for a permit to build a one story auto supply store and drug store. The dimensions were 147 feet along Liberty Road, 75 feet deep and 36 feet high. The value of the completed improvements was stated to be $59,000 and a full basement was indicated. According to the plan filed with the application the easternmost 48.5 feet was to be devoted to the drug store. The plot plan (as later amended) filed with the application shows 42 parking spaces on the T. & L. property and 20 (5 more than Price agreed to) on Price's property. After the granting of the building permit and while construction was under way an amended construction plan was filed with the Department of Permits and Licenses. This called for suites of offices and a beauty parlor in the basement under the auto supply store. The basement under the drug store was designated, as before, for storage use. On 14 December 1961 Charles B. Wheeler, the Director and Buildings Engineer of the

Department of Permits and Licenses wrote to T. & L. calling attention to its failure to obtain approval for the construction in progress in the basement. Additional off-street parking facilities apparently were not required by the officials who dealt with the revised plans and it must be assumed that the revised plans were approved. Price said he did not become aware of the existence of the offices and the beauty shop for some years as this activity was confined to the other end of the T. & L. building and on the inside. It would seem also to be a reasonable inference that any increase in the parking on his property was negligible which, if true, would help to explain his lack of awareness of the expanded use of the basement under the auto store.

In January 1962 T. & L. conveyed the drug store and the easternmost end of its lot to Levin. In August 1965 (3 years later) Levin applied for a permit to remodel the basement under the drug store for use as a billiard parlor. The permit was issued on 12 August 1965. Partitions for toilets and the construction of an entrance facing Price's property were required by the permit. No mention was made of the need for additional parking area. Price, annoyed by the preemption of his parking area by patrons of the billiard parlor, filed his bill of complaint in the Baltimore County Circuit Court on 12 November 1965, praying an injunction against the use of Levin's property as provided in Sec. 504 [1] of the Zoning Regulations.

James G. Hoswell, an employee in the office of Planning and Zoning, testified it was his job to process building permit applications to determine whether the requirements of section 409.2 b (6) of the off-street parking regulations had been complied with. He said 55 parking spaces would have been required "for the first floor area of the original stores." The T. & L. park-

---

1. "In addition to all other remedies provided by law, the Zoning Commissioner, or any person whose property is affected by any violation, *including abutting and adjacent property owners, whether specially damaged or not,* may maintain an action in the Circuit Court for the County for an injunction enjoining the erection, construction, reconstruction, alteration, repair or *use* of buildings, structures and land in violation of Zoning Regulations and restrictions adopted pursuant to these Regulations." (Emphases supplied.)

162

ing plan, revised 25 September 1961, shows a total of 42 spaces on its own property. If to this is added the 15 spaces contributed by Price, T. & L. qualifies with a bare margin of 2 spaces. However, Mr. Hoswell testified that the conversion of the basement beneath the auto store to offices and a beauty parlor increased by 5 the number of required spaces. The conversion of the drug store basement to a billiard parlor, he said, increased by 7 the number of required spaces. Since the entrance to the billiard parlor takes up one space it is clear that Levin (and T. & L.) are short 11 spaces and in violation of the regulations.

Price's case has other facets which, in the final analysis, may or may not advance his cause but, at this stage of the proceedings, it is not necessary for us to dwell upon them since we think the evidence above set forth makes out a prima facie case that Levin was in violation of the regulations. The chancellor should have denied his motion to dismiss.

*Order reversed.*
*Case remanded for further proceedings.*
*Costs to be paid by the appellees.*