## No. 26764

## Walter C. Stroud and Helen E. Stroud v.
## The City of Aspen, Colorado, a Municipal Corporation
(532 P.2d 720)

Decided March 3, 1975.

2

Wendt & Kistler, John A. F. Wendt, Jr., for plaintiffs-appellees.

Sandra M. Stuller, City Attorney, for defendant-appellant.

Susan K. Griffiths, Deputy General Counsel, for Colorado Municipal League, amicus curiae.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

Because the constitutionality of a city ordinance was challenged in this action, original appellate jurisdiction is in this court (section 13-4-102(1)(b), C.R.S. 1973).

In 1971 the plaintiffs (the Strouds) applied for a building permit to erect a business building in a commercial core (C-C) area in the City of Aspen (the city). The permit was denied until the Strouds complied with the city's ordinance relating to furnishing off-street parking. The ordinance contained a two-pronged option: an applicant for a permit in a C-C district (1) must either provide parking spaces on-site pursuant to a specific formula; or (2) must enter into a lease agreement with the city for the required number of parking spaces in a municipal-owned parking facility under such terms and conditions as the city manager may impose. The Strouds planned a building which would require five spaces. They elected to use the second option and were presented a lease for five spaces not specifically designated as to location and carrying a price tag of $24,000 payable in annual advance installments of $1,200 for a total of 20 years. The lease contained an incongruous loophole, to wit: "Nothing contained herein shall require the City to construct said parking facilities." Thus, the Strouds were required to and did pay a fee to acquire parking in lieu of providing spaces themselves, but the city was under no obligation to augment parking availability and did not do so specifically for those holding leases.

The Strouds paid one installment on the lease. Thereafter they questioned the city about the validity of the lease, and when negotiations failed brought the instant suit. They challenged the constitutionality of the ordinance, asked for cancellation of the lease and a money judgment for the first annual installment on the lease. The city counterclaimed for an unpaid lease fee plus interest. The trial court entered judgment for the Strouds and dismiss-

ed the city's counterclaim. We reverse the trial court in part and affirm in part although for a different reason.

I.

We first consider the off-street parking requirements of the ordinance in principle. The trial court found that the Aspen off-street parking ordinance violated the *Colo. Const.,* Art. II, Sec. 15, as a taking of property without just compensation, basing its holding on *The City and County of Denver v. Denver Buick, Inc.,* 141 Colo. 121, 347 P.2d 919 (1959). In that case a sharply divided court found, *inter alia,* that off-street parking require-ments were per se unconstitutional. The Strouds seek to have the rationale of *Denver Buick* upheld. The city in a lengthy and well-written brief criticizing the case seeks to have *Denver Buick* reassessed and reconstrued.

We agree with the city that the time has come to re-evaluate *Denver Buick.* It appears that no court — except Colorado — has specifically held municipal off-street parking requirements un-constitutional per se. Those courts which have considered the issue have generally upheld them as a proper application of the municipal police power. *See Yates v. Mayor and Commissioners of the City of Jackson,* 244 So.2d 724 (Miss. 1971); *Overhill Building Co. v. Delany,* 28 N.Y.2d 449, 322 N.Y.S.2d 696, 271 N.E.2d 537 (1971); *Central Bank and Trust Co. v. City of Miami Beach,* 392 F.2d 549 (5th Cir. 1968); *Sisters of Bon Secours Hospital v. City of Grosse Pointe,* 8 Mich. App. 342, 154 N.W.2d 644 (1967); *State ex rel. Associated Land and Invest-ment Corp. v. Lyndhurst,* 168 Ohio St. 289, 154 N.E.2d 435 (1958).

Other courts, even though not clearly presented with a chal-lenge to the validity of off-street parking requirements per se, have stated that the underlying principles for such provisions are generally valid. *See Radcliffe College v. City of Cambridge,* 350 Mass. 613, 215 N.E.2d 892 (1966); *Chambers v. Zoning Board of Adjustment of Winston-Salem,* 250 N.C. 194, 108 S.E.2d 211 (1959).

Courts in many other cases have considered off-street parking requirements with no hint that the requirements might be invalid on their face, apparently assuming their general validity. *See Miami Beach v. 100 Lincoln Road, Inc.,* 214 So.2d 39 (Fla. Dist.

Ct. App. 1968); *Price v. Levin,* 248 Md. 158, 235 A.2d 547 (1967); *Redwood City Company of Jehovah's Witnesses, Inc. v. City of Menlo Park,* 167 Cal. App.2d 686, 335 P.2d 195 (1959); *Reiser v. Meyer,* 323 S.W.2d 514 (Mo. App. 1959); *McKinney v. Board of Zoning Adjustment of Kansas City,* 308 S.W.2d 320 (Mo. App. 1957); *Congregation Committee, North Fort Worth Congregation, Jehovah's Witnesses v. City Council of Haltom City,* 287 S.W.2d 700 (Tex. Civ. App. 1956); *City of New Orleans v. Leeco, Inc.,* 226 La. 335, 76 So.2d 387 (1954); *State ex rel. Ogden v. City of Bellevue,* 45 Wash.2d 492, 275 P.2d 899 (1954); *Windsor Hills Improvement Association v. Mayor and City Council of Baltimore,* 195 Md. 383, 73 A.2d 531 (1950).

■ Besides the overwhelming consensus of case law, we recognize two other reasons to reconsider *Denver Buick.* First, authors of law review articles have without exception, as far as we can determine, condemned *Denver Buick* as an aberration oblivious to the contemporary needs of American cities. *See* 9 *Kan. L. Rev.* 72 (1960); 35 *Notre Dame Lawyer* 477 (1960); 58 *Mich. L. Rev.* 1068 (1960); 32 *Rocky Mt. L. Rev.* 400 (1960); 37 *U. Det. L. Rev.* 766 (1960); 46 Va. L. Rev. 999 (1960). Second, *Denver Buick* from its inception was a weak case. A majority of the court failed to agree on the rationale for invalidating Denver's ordinance — hardly the kind of precedent we care to consider as binding authority. Moreover, in its 14-year existence the case's prohibition against off-street parking requirements has never been relied on except in a companion case of *Denver v. Redding-Miller,* 141 Colo. 269, 347 P.2d 954 (1959). Thus, while we generally adhere to the doctrine of *stare decisis,* under the circumstances a deviation from that doctrine of judicial policy is warranted.

We have the benefit of an excellent *amicus curiae* brief filed by the Colorado Municipal League. We are swayed by its argument that off-street parking requirements, as a part of municipal zoning ordinances, should be subject to the same general standards of judicial review as zoning ordinances generally. This court has long recognized that municipal zoning ordinances are constitutional in principle. *See* the early opinions *Colorado Springs v. Miller,* 95 Colo. 337, 36 P.2d 161 (1934); *Colby v. Board of Adjustment,* 81 Colo. 344, 255 P. 443 (1927). In noting the

constitutional validity of zoning ordinances in principle, the court in *Colby* referred to the United States Supreme Court opinion of *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). More recently the United States Supreme Court again had occasion to review the constitutional validity of a municipal zoning ordinance in *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Both cases recognize that zoning is constitutionally permissible so long as it is not arbitrary and is reasonably related to the public health, safety, morals and welfare. Colorado has adopted a similar view. *Bird v. Colorado Springs*, 176 Colo. 32, 489 P.2d 324 (1971); *Wright v. Littleton*, 174 Colo. 318, 483 P.2d 953 (1971); *DiSalle v. Giggal*, 128 Colo. 208, 261 P.2d 499 (1953); *Colorado Springs v. Miller, supra; Colby, supra.*

This court, too, has recognized the need to grant municipalities broad legislative discretion in achieving zoning objectives. *Nopro Co. v. Cherry Hills Village*, 180 Colo. 217, 504 P.2d 344 (1972). We have granted zoning ordinances a presumption of validity, and placed upon those who assail them the burden of proving their invalidity beyond a reasonable doubt. *Board of County Commissioners v. Simmons*, 177 Colo. 347, 494 P.2d 85 (1972); *Baum v. Denver*, 147 Colo. 104, 363 P.2d 688 (1961). In the eyes of this court, off-street parking requirements should receive no less consideration than other zoning ordinances.

We therefore hold that off-street parking requirements are not per se unconstitutional as a taking of property without just compensation, expressly overruling *Denver Buick* on that point. We reach this conclusion with no reluctance. We take judicial notice that off-street parking is a fact of life and the fees generated therefrom by the owners are quite adequate albeit also inflationary. Studies of traffic problems uniformly find air pollution to be related to autoists moving slowly around block after block seeking a place to park. In these days of environmental concern, we cannot believe that it is unconstitutional to require those who invite large numbers of people to their establishments — who in turn clog the streets, air and ears of our citizens — to provide parking facilities so that automobiles may be placed in a stall and stilled.

## II.

██ We next consider whether the Strouds' lease agreement with the city of Aspen is invalid. While off-street parking requirements are not unconstitutional in principle, we find that section of the ordinance providing for leasing of city facilities contains an improper delegation to the city manager with no standards spelled out. Thus as applied — which may be at the manager's whim — the price, length of time of the lease and the proviso that nothing need be furnished all point up the over-broad aspects of the ordinance.

Although the record shows that Aspen did acquire some additional land for off-street parking and made certain minimal improvements to a previously owned parking lot, these and other traffic improvements, as far as we can determine, were very minor and paid for not only out of the earmarked lease fund, but also from other general revenue sources. Moreover, the improvements were of benefit to the people of Aspen as a whole and have not been for the use and benefit of the Strouds or other lessees of off-street parking. The city has no present plans to devote any portion of its parking lots to the enumerated spaces specifically paid for by the lessees, Strouds, or others who also opted for the alternative leasing arrangement.

██ In short, Aspen has undertaken little or no solution of its parking problems from the fees collected for that specific purpose, apparently relying on the disclaimer in the lease agreement which relieves them from the necessity to do so. But the power to impose fees under pertinent statutory authority presupposes the obligation to construct and operate the services contracted for. An ordinance fee imposed but unfulfilled is unjust and unreasonable and therefore unconstitutionally applied.

██ The Strouds' lease agreement, executed to comply with the ordinance, is void and petitioners are entitled to have their money refunded.

The city relies on *Western Corp. v. Fort Collins,* 146 Colo. 464, 362 P.2d 155 (1961), in support of its position that the lease agreement is valid and uniform. That case lends no support to its argument. There, the city of Fort Collins had constructed and was

operating the facility for which it had imposed charges for services furnished.

We have examined the city's other contentions and find them to be without merit.

As to that portion of the judgment finding the zoning ordinance as a whole invalid, we reverse. We affirm the judgment declaring invalid the portion of the ordinance imposing the option for lease requirements and awarding refund of the monies paid by the Strouds with interest. We also affirm the judgment dismissing the city's counterclaim for the unpaid lease fee.

MR. JUSTICE LEE does not participate.