The CITY OF ASPEN and Aspen Planning and Zoning Commission, Petitioners,

v.

Ronnie MARSHALL, Respondent.

No. 94SC650.

Supreme Court of Colorado, En Banc.

March 4, 1996.

Rehearing Denied March 25, 1996.

John P. Worcester, City Attorney, David E. Bellack, Assistant City Attorney, Aspen, for Petitioners.

Garfield & Hecht, P.C., Patrick D. McAllister, Aspen, for Respondent.

David W. Broadwell, Denver, for Amicus Curiae Colorado Municipal League.

Justice ERICKSON delivered the Opinion of the Court.

In spring of 1990, Ronnie Marshall built a hot tub and deck in her back yard, located above Hallam Lake in Aspen, Colorado. Thereafter, Marshall applied for a building permit, and the Aspen Planning and Zoning Commission (the Commission) denied Marshall's application. Marshall sought review of that denial in the district court. The district court denied relief, granted summary judgment in favor of the City of Aspen (the City) and the Commission, and granted the City and the Commission an injunction ordering removal of the hot tub and deck from the property. *Marshall v. City of Aspen,* No. 92CV47, slip op. at 12 (D.Ct. May 3, 1993). The district court also held that the City was not estopped from enforcing its Municipal Code. *Id.* at 9–10. The court of appeals reversed. *Marshall v. City of Aspen,* 892 P.2d 394 (Colo.App.1994). We reverse the decision of the court of appeals and remand this case to that court with directions.

I

Marshall's property lies within a Historic Preservation District and is a designated historic landmark. The property also lies partially within an area now designated as the Hallam Lake Bluff Environmentally Sensitive Area (ESA), which overlooks the Aspen Center for Environmental Studies nature preserve. Marshall constructed a hot tub and deck on her property in spring of 1990 without applying for or obtaining the proper permits or variances. On May 31, 1990, the City issued a stop-work order on the construction. On June 14, 1990, Marshall applied for a building permit.

On June 29, 1990, the Commission undertook consideration of a new land use ordinance creating the Hallam Lake Bluff ESA and restricting development within the ESA. *See* Aspen, Colo., Municipal Code § 24–7–501(D). On July 19, 1990, the Commission published a notice of hearing. On October 2, 1990, the Commission recommended adoption of the ESA ordinance. On November 12, 1990, the City adopted the ESA ordinance. *See* Aspen, Colo., Municipal Code § 24–7–506.

Under the Municipal Code, before obtaining a building permit, Marshall had to obtain: (1) approval from the Historic Preservation Committee (HPC) because her site was a historical landmark, *see* Aspen, Colo., Municipal Code § 24–7–601; and (2) a variance from the Board of Adjustment (BOA) because thirty-two inches of the deck protruded more than thirty inches above natural grade, *see* Aspen, Colo., Municipal Code § 24–3–101 (defining "yard" and permitting certain obstructions). *See also* Aspen, Colo., Municipal Code § 24–6–206 (outlining the procedure to obtain a building permit). On June 14, 1990, when Marshall submitted her initial application for a building permit, she had neither applied for nor obtained either the approval of the HPC or a variance from the BOA.

Marshall applied for HPC approval on July 26, 1990. On August 22, 1990, the HPC granted Marshall approval conditioned on the provision of landscaping along the Hallam Lake side of the deck. Marshall installed $1000 of landscaping. In November 1990, a representative of the HPC inspected the landscaping and informed the Zoning Department that the landscaping was sufficient to satisfy HPC development review standards.

On March 8, 1991, Marshall applied for a variance from the BOA. According to the minutes of the June 1991 BOA meeting, the BOA granted Marshall a variance subject to the requirement "that they go back and meet the buildings [sic] codes with respect to railings and the ESA and HPC for that railing to ascertain if it is appropriate."

In October 1991, Marshall applied for ESA review. In December 1991, the Commission denied Marshall's application as proposed because her hot tub and deck did not comply with the ESA requirements. At the same time, the Commission proposed an alternate location in Marshall's back yard at which the Commission would approve the hot tub and

deck. The Commission reconsidered and re-affirmed its decision on January 21, 1992.

Marshall appealed the Commission's decision to the district court pursuant to C.R.C.P. 106(a)(4), asserting that the Commission abused its discretion and exceeded its jurisdiction by denying Marshall's application for ESA approval. Marshall also requested that the City be estopped and permanently enjoined from applying the Hallam Lake Bluff ESA requirements to Marshall's hot tub and deck.

The City and the Commission filed an answer and counterclaim, alleging that Marshall had violated the Municipal Code and seeking injunctive relief which would require Marshall to remove the hot tub and deck. The City and the Commission also moved for summary judgment on their counterclaim and on Marshall's second claim for relief.

The district court denied Marshall's C.R.C.P. 106(a)(4) claim and found that, by the time Marshall received the necessary variance from the Board of Adjustment, the ESA ordinance was in effect and that that ordinance governed Marshall's application. *Marshall,* slip op. at 5–6, 12. The court found that Marshall had no vested property rights in the deck and hot tub which would eliminate the requirement that she comply with the ESA ordinance. *Id.* at 6–8. The court held that the City was not estopped from enforcing the ordinance and granted summary judgment in favor of the City and the Commission. *Id.* at 9–12.

■ The court of appeals reversed the dismissal and vacated the injunction, *Marshall,* 892 P.2d 394, holding that: (1) the pending ordinance doctrine [1] did not apply to Marshall's application because Marshall filed her application before consideration or adoption of the ESA, *id.* at 396–97; (2) the law on the date of initial application controls the issuance of a permit, *id.* at 397; and (3) the

vesting of Marshall's rights was not dispositive but, because Marshall "applied for the permit prior to ESA consideration or adoption, she [was] entitled to have her application considered under the laws in effect at the time of the application." *Id.* The court of appeals did not address Marshall's estoppel claims.

We granted certiorari to consider: (1) "Whether Aspen abused its discretion or exceeded its jurisdiction in applying an ordinance duly enacted and adopted after [Marshall] filed her building permit application but before her building permit was denied;" and (2) "[w]hether the court of appeals properly applied the pending ordinance doctrine as defined in *Crittenden v. Hasser,* 41 Colo. App. 235, 585 P.2d 928 (1978), and *National Advertising Company v. City and County of Denver,* 912 F.2d 405 (10th Cir.1990)."

## II

Two standards of review are appropriate to this case: (1) the standard of review of an agency's decision pursuant to C.R.C.P. 106(a)(4); and (2) the standard of review of the district court's grant of summary judgment.

■ In reviewing the Commission's decision, we are limited to matters contained within the record of the proceeding before the Commission. C.R.C.P. 106(a)(4)(I); *see Hessling v. City of Broomfield,* 193 Colo. 124, 125, 563 P.2d 12, 13 (1977). We must examine that entire record and uphold the Commission's decision unless no competent evidence supports it. *See King's Mill Homeowners Ass'n v. City of Westminster,* 192 Colo. 305, 311, 557 P.2d 1186, 1190 (1976).

■ "Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

1. The "pending ordinance doctrine" provides:

A municipality may properly refuse a building permit for a land use repugnant to a pending zoning ordinance, even though application is made when the intended use conforms to existing regulations, and even though the application is made a considerable time before the enactment of the pending ordinance, provided

the municipality has not unreasonably or arbitrarily refused or delayed the issuance of a permit, and provided the ordinance was legally "pending" on the date of the permit application.

8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.155, at 691 (3d ed.1991) (footnotes omitted).

matter of law." *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1339–40 (Colo.1988). In determining whether summary judgment is appropriate in this case, Marshall must receive the benefit of all favorable inferences which we may reasonably draw from the undisputed facts. *Mancuso v. United Bank of Pueblo,* 818 P.2d 732, 736 (Colo.1991).

### III

■ Marshall was required to obtain all development orders required by the land use regulations in the Aspen Municipal Code before she could "proceed to apply for a building permit from the chief building official." *See* Aspen, Colo., Municipal Code § 24–6–206. The procurement of these underlying development orders constituted the initial, preliminary steps to Marshall's application for a building permit.[2] Indisputably, Marshall needed at least two development orders before applying for a building permit: (1) approval from the HPC for development of an historic landmark; and (2) a variance from the BOA to allow the deck's protrusion of more than thirty inches above natural grade. *See* Aspen, Colo., Municipal Code § 24–3–101 (defining "development order" as including approval of development of an historic landmark and grant of variance).[3]

■ Marshall argues that "[t]he Court of Appeals correctly held that 'the law in existence at the time of the permit application governs the right to the issuance of the permit.'" Respondent's Answer Brief at 5. Even assuming that this argument is correct, we conclude that Marshall's hot tub project is subject to the ESA ordinance. Any application Marshall made before procuring the ap-propriate development orders was incomplete and ineffective. Marshall herself admits in an affidavit to the district court that she "reapplied for a buiding [sic] permit after having obtained a zoning variance from the Board of Adjustment" in June of 1991. *See* Exhibit C to Respondent's Answer Brief at 1. At the time of the "reapplication," the ESA ordinance was in effect and should govern the grant or denial of her reapplication. Accordingly, the Commission did not abuse its discretion or exceed its jurisdiction in applying the ESA ordinance to Marshall's application for a building permit. The court of appeals erred in reversing the district court's judgment in favor of the City and the Commission and in vacating the injunction requiring Marshall to remove the hot tub and deck or bring it into compliance with the ESA ordinance.

### IV

■ Marshall contends that she has a right to retain her hot tub and deck due to: (1) the timing of the filing of her initial building permit application and the subsequent passage of the ESA ordinance before her "reapplication" for a building permit; (2) her procurement of HPC approval and a variance; and (3) her attendance at the HPC and BOA hearings. We agree with the district court that Marshall has no right, vested or otherwise, to retain the hot tub.

[O]rdinarily an application for a permit made before a zoning ordinance becomes effective gives in itself no right to a use excluded by the ordinance. Indeed, generally speaking, no preliminary proceedings

---

**2.** Marshall repeatedly contends that her *contractor* failed to obtain the appropriate permits and that she cannot be faulted. We agree with the City that "the failure of Ms. Marshall's contractor to obtain a building permit cannot be imputed to Aspen. If he failed to comply with his contractual obligations to Ms. Marshall by not seeking a building permit, that matter is between them and does not involve the City of Aspen. However much she may have relied upon her contractor to her detriment, it is not reasonable to hold Aspen responsible for his failings." *See* Petitioners' Reply Brief at 2.

**3.** The definition of "development order" also includes a building permit. *See* Aspen, Colo., Mu-nicipal Code § 24–3–101. However, in the context of section 24–6–206(A), we construe the term "development order" to mean those development orders which pre-approve portions of the proposed development and which underlie the actual issuance of a building permit. *See, e.g.,* Aspen, Colo., Municipal Code § 24–7–604 (authorizing appeal of any action of the HPC in approving, conditionally approving, or disapproving a development order); Aspen, Colo., Municipal Code § 24–10–105(C) (authorizing the BOA to issue a development order approving, approving with conditions, or disapproving a development application for a variance).

to the obtaining of a permit give rise to any vested right to pursue a use in a zoned district. Thus, no vested right to a particular use in a zoned district is acquired by approval of plan for it, nor by an alleged promise to issue a permit if certain changes are made in the plans.

8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.155, at 691 (3d ed.1991) (footnotes omitted). This is especially true where, as here, the incomplete application made before the ordinance became effective was either withdrawn or rejected, then replaced with a "reapplication." Further, Marshall made her initial application in an attempt to retroactively legalize a structure built without proper approval and in violation of the ordinances in effect at that time. The Municipal Code explicitly provides that "[n]o development shall occur except pursuant to a building permit that is issued pursuant to the terms and procedures of this section." Aspen, Colo., Municipal Code § 24–6–206(B). Marshall obtained no vested rights by her submission of an incomplete application for a building permit nor by her unauthorized construction of a structure in violation of the Municipal Code. *See* § 24–68–103(1), 10B C.R.S. (1988) (stating that a vested right is established "upon the *approval,* or *conditional approval,* of a site specific development plan, following notice and public hearing, by the local government in which the property is situated" (emphasis added)).

Section 9 of the ordinance which created the Hallam Lake Bluff ESA provided that:

Any development or proposed development in the Hallam Lake Bluff ESA Overlay District not vested in accordance with law prior to the effective date of this ordinance shall comply with the terms and provisions of the Hallam Lake Bluff ESA develop-

ment standards as adopted pursuant to this ordinance.

Marshall's rights were not vested prior to the effective date of the ESA ordinance. The Commission violated neither the constitution nor the intent of the ordinance and did not abuse its discretion in applying the ordinance to Marshall's development.

V

■ Under the pending ordinance doctrine, "a municipality may deny an application for a license or permit on the basis of a pending ordinance prohibiting the requested use." *National Advertising,* 912 F.2d at 412. We have never addressed the applicability of the pending ordinance doctrine [4] and decline to do so in this case in light of our conclusion that the ESA ordinance was in effect at the time of Marshall's reapplication for a building permit.[5]

Marshall cites our decision in *City and County of Denver v. Denver Buick, Inc.,* 141 Colo. 121, 347 P.2d 919 (1959), *overruled on other grounds, Stroud v. City of Aspen,* 188 Colo. 1, 532 P.2d 720 (1975), as contrary to the pending ordinance doctrine and in support of her proposition that "[t]he law in Colorado is clear in that the law in existence at the time of the permit application governs the right to the issuance of the permit." Respondent's Answer Brief at 6. In *Denver Buick,* we applied the constitutional prohibition against the enactment of any law "retrospective in its operation" and held that a zoning ordinance could not be given an effective date of February 11, 1955, when the ordinance was not enacted until November 7, 1956. 141 Colo. at 139–40, 347 P.2d at 930; *see* Colo. Const. art. II, § 11. Article II, section 11 is inapplicable here in light of our holding that the ESA ordinance was effective

---

4. The court of appeals has recognized the pending ordinance doctrine on two occasions: (1) *Gramiger v. County of Pitkin,* 794 P.2d 1045, 1048 (Colo.App.1989); and (2) *Crittenden v. Hasser,* 41 Colo.App. 235, 237, 585 P.2d 928, 929 (1978). The Tenth Circuit cited *Crittenden* in stating that "Colorado joined the majority of jurisdictions when it applied a variant of the pending ordinance doctrine." *National Advertising Co. v. City and County of Denver,* 912 F.2d 405, 412 (10th Cir.1990).

5. We also decline to interpret the meaning of section 24–1–104(B)(3) of the Aspen Municipal Code, which states:

The provisions of this chapter and any amendments hereto shall not affect the review of any ... building permit application lawfully submitted prior to the effective date of this chapter pursuant to the provisions of the zoning ... regulations in effect immediately prior to the effective date of this chapter.

when Marshall reapplied for a building permit. The holding in *Denver Buick* should be limited to its facts and, in any case, is not dispositive of the pending ordinance issue or of the applicability of the ESA ordinance in this case.

## VI

The court of appeals declined to address Marshall's estoppel arguments. However, our review of the record, including the transcripts of the meetings of the Commission, the HPC, and the BOA, reveals neither a genuine issue of material fact nor any affirmative statement by a City representative that a building permit would issue. Because a building permit is a prerequisite to any development in Aspen, *see* Aspen, Colo., Municipal Code § 24–6–206(B), the issuance or promised issuance of a building permit is the only City action upon which Marshall might reasonably rely in constructing her hot tub and deck. However, Marshall constructed the hot tub and deck before seeking any approval from the City.

Marshall claims that she installed landscaping around the deck in reliance upon statements from the HPC. This is not sufficient detrimental reliance to sustain Marshall's arguments for estoppel. Marshall constructed the deck before seeking approval from the HPC, the BOA, or any other City representative. Her attempts to later camouflage the deck to appease the HPC cannot be deemed "reliance" upon statements of the HPC.

Marshall cites to McQuillin for the proposition that "[w]hile it is not essential that the property owner be advised of [a pending ordinance] by the City, to the extent that he or she remains unaware of such efforts and continues to expend funds on his or her property in reliance on the existing ordinance, the City may be estopped from denying the permit." McQuillin, *supra*, § 25.155 at 691 (footnotes omitted). We reject this argument for three reasons: (1) the ESA ordinance was in effect at the time of Marshall's "reapplication" for a building permit; (2) on the record before us, Marshall was aware of the pendency and subsequent adoption of the ESA ordinance prior to her reap-

plication; and (3) Marshall made the majority of her expenditures not in reliance on the existing Municipal Code, but in defiance of the Code's provisions.

## VII

Accordingly, we reverse the decision of the court of appeals and remand to that court with directions to vacate its remand to the district court and to reinstate the district court's judgment.