24 So.3d 405 (2009)
Albert DUCKETT and Alice Duckett, Appellants,
v.
MAYOR AND BOARD OF ALDERMAN OF the CITY OF OCEAN SPRINGS, Mississippi, Appellees.
No. 2008-CA-01329-COA.
Court of Appeals of Mississippi.
December 15, 2009.
*406 John Paul Barber, Biloxi, attorney for appellants.
Kendall K. Stockman, John B. Edwards, attorneys for appellees.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Albert and Alice Duckett appeal the judgment of the Circuit Court of Jackson County affirming the City of Ocean Springs' ("the City") decision to allow Harbor Landing to offer food and beverage services. The Ducketts claim the circuit court erroneously failed to (1) apply a de novo standard of review to the interpretation of the city zoning ordinance, (2) hold that the City's decision was an illegal special-use exception, (3) conclude that the City's interpretation of the zoning ordinance was arbitrary and capricious, (4) find that the City's decision amounted to illegal spot zoning, and (5) find that the City's decision was an illegal variance. We find that the City's decision was arbitrary and capricious; therefore, the judgment of the circuit court is reversed and rendered. Because this issue is dispositive of the case, we need not address the Ducketts' remaining assignments of error.

FACTS
¶ 2. Harbor Landing is a boat-storage facility located on the Ocean Springs harbor, in the limited marina district (C-4-B zone). The City issued a building permit to Harbor Landing owners David and Melba Harris authorizing the rebuilding of a ship's store and a boat-storage facility after Harbor Landing was damaged in Hurricane Katrina. At that time, Harbor Landing offered pre-made sandwiches and other packaged snacks; it had no on-site food preparation.
¶ 3. Subsequent to the issuance of the permit, Terry Agar, a city building official, read an article in the local newspaper that announced Harbor Landing's intention to have a deli and sell po-boys and gumbo. Agar sent David Harris a letter warning that the deli would be classified as a restaurant, and the only way Harris would be allowed to operate a restaurant in the harbor zoning area would be to obtain a special-use permit from the City's planning commission.
¶ 4. After receiving the letter from Agar, the Harrises filed a public hearing application with the City. That application requested that the property be used as a full-service marina. On March 13, 2007, the planning commission held a public meeting and heard from proponents of the deli and from those opposed to the idea of Harbor Landing preparing food. The application was tabled until the next meeting so that more information on parking issues could be obtained.
*407 ¶ 5. At their April 10, 2007, meeting, the planning commission voted to deny the special-use permit. The planning commission also voted to recommend that the Mayor and Board of Alderman of the City of Ocean Springs ("the Board") prepare an agreement with Harbor Landing limiting the scope of food sales to food prepared off site.
¶ 6. The Harrises appealed this decision to the Board. Before the appeal was heard, the Harrises requested a clarification of the zoning ordinance. Upon the City's attorney's review of the ordinance, it was determined that a special-use permit was not allowed under the relevant ordinance; thus, the Board informed the Harrises that it was impossible for them to obtain a special-use permit. However, the Board further held that the proposed deli qualified as a permitted use under the language of the ordinance. The ordinance governing permitted uses in the C-4-B zone states the following:
In the marina zone the use of buildings, other structures, and the land is restricted to the following:
Yacht clubs, sale or service and supplies including beverages and food for boats and water craft which use the small craft harbor. Specifically prohibited are: All types of commercial marine ways, repair shops or any type of industrial activity.
City of Ocean Springs Zoning Ordinance § 409.2. A resolution was passed interpreting this zoning ordinance to allow Harbor Landing to operate a deli.
¶ 7. The Ducketts, who own a home on the harbor, appealed the City's ruling to the circuit court. After a hearing on the matter, the circuit court affirmed the resolution of the Board. The Ducketts now appeal the judgment of the circuit court.

STANDARD OF REVIEW
¶ 8. "When [the appellate court] reviews a decision by a circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow." Miss. Sierra Club v. Miss. Dep't of Envtl. Quality, 819 So.2d 515, 519(¶ 15) (Miss.2002). "We will entertain the appeal to determine whether the order of the administrative agency[:][ (]1) was unsupported by substantial evidence, [ (]2) was arbitrary or capricious, [(]3) was beyond the power of the administrative agency to make, or [(]4) violated some statutory or constitutional right of the complaining party." Id. Questions of law are reviewed de novo. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990).

ANALYSIS

Whether the City's decision to allow Harbor Landing to prepare hot food within the limited marina district was arbitrary and capricious and beyond the City's authority.
¶ 9. The Ducketts claim that the City's decision was arbitrary and capricious because the City interpreted Harbor Landing's proposal as a permitted use under the zoning ordinance and then placed restrictions on such use. They question how this use could be a permitted use if various restrictions were necessary. The Ducketts argue that the City, in fact, granted a special-use permit that was not authorized under the zoning ordinance.
¶ 10. The City's decision has caused confusion on appeal because the City's ruling in this case is inconsistent. The issue to be determined was whether or not Harbor Landing's proposal to serve hot food constitutes the "sale or service and supplies including beverages and food for boats and water craft which use the small[-]craft harbor" under the limited marina *408 district zoning ordinance.[1] The City found that the proposal was a permitted use under this language of the ordinance. However, the City's decision did not stop there.
¶ 11. The City further found that: (1) Harbor Landing will primarily provide food to the boating public that use the harbor; (2) because of traffic congestion, Harbor Landing is required to designate parking spaces and provide security from May 1 to September 14 for traffic/parking control during weekends and holidays; and (3) because the neighborhood could be adversely affected by loud noise, Harbor Landing is required to operate from only sun up to sun down. The City concluded that if any of these facts change or representations were not accurate, "any such related permits will be revoked as such use may be deemed non-conforming within the [C-4-B zone]."
¶ 12. This Court discussed the difference in a permitted use and a conditional use in Walters v. City of Greenville, 751 So.2d 1206, 1209 (¶¶ 12-13) (Miss.Ct.App. 1999), stating:
In 83 Am.Jur. Zoning and Planning § 213 (1992) the author describes permitted uses: "Some zoning ordinances contain a general provision or cumulative provisions permitting kinds of buildings and uses thereof in less restricted zones that are expressly permitted in the more restricted zones."
....
In 83 Am.Jur.2d Zoning and Planning § 218 (1992) conditional zoning is described: "Conditional zoning is a device employed to bring some flexibility of use to an otherwise rigid system of control. It is generally used to describe a zoning change granted to an owner subject to condition as generally not applicable to land similarly zoned. `Conditional zoning' involves ordinances which provide either that rezoning becomes effective immediately with an automatic repealer if the specified conditions are not met, or that the zoning becomes effective only upon conditions being met within a certain time."
¶ 13. On one hand, the City claims to be interpreting what constitutes a permitted use under its zoning ordinance; on the other hand, it claims to have issued a revocable permit to Harbor Landing listing multiple conditions that must be met to maintain such permit. Both parties agree, based on the opinion of the City's attorney,[2] that a special-use or conditional-use permit is not permitted in the limited marina district. In the City's brief, it argues *409 that a special permit was not issued by the City; instead, the City "simply interpreted the language of its zoning ordinance and nothing more." We find this argument unconvincing considering the additional restrictions applied by the City.
¶ 14. Had the City simply interpreted Harbor Landing's proposal as a permitted use, without further restrictions, this Court would be bound to give deference to the City's interpretation, as it was the enacting body of the ordinance. Faircloth v. Lyles, 592 So.2d 941, 945 (Miss.1991). However, we find, as did the circuit court, that the City in actuality granted a special-use permit. Had this been a true interpretation of the ordinance, there would be no further action required by the City. There would be no permit to revoke.
¶ 15. We find that the City's decision was an attempt to circumvent its inability to issue a special-use permit in the limited marina district. Accordingly, the decision was arbitrary and capricious and beyond the City's authority. As the Ducketts state in their brief, the City essentially attempted to re-zone the limited marina district without complying with the statutory protections attendant to a rezoning action. If the City wishes to have the ability to grant such permits in this zoning district, the proper steps to amend the zoning ordinance should be taken. See, e.g., Miss.Code Ann. § 17-1-17 (Rev.2003) (requiring fifteen days' notice of a hearing be given in an official paper or paper of general circulation). The circuit court's judgment affirming the City's decision is reversed and rendered.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., LEE, P.J., IRVING, BARNES, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MYERS, P.J., AND ISHEE, J., NOT PARTICIPATING.
CARLTON, J., DISSENTING:
¶ 17. Po-boys and gumbo constitute types of food.[3] Therefore, I must respectfully dissent and submit that the City of Ocean Springs' ("the City") interpretation of the zoning ordinance was logically based on the plain language of the ordinance. I agree with the City's position that it was merely interpreting its zoning ordinance.
¶ 18. In this case, the City determined the intended use qualified under the ordinance as a permitted use in the C-4-B zone at issue. This C-4-B zone permitted use allows, on its face, services and supplies, including food and beverages, for boats and watercraft that use the small-craft harbor. Hence, the food Harbor Landing proposed to sell clearly falls within this plain language of the permitted use.
¶ 19. In my view, the conditions set forth by the City provided parameters to ensure the deli operated within the scope of the permitted use. In defense of these conditions, the City explained that, as stated above, it was merely interpreting the language of its own zoning ordinance, and I agree with that assessment. Execution *410 and enforcement is, after all, at the core of executive power. Barbour v. State ex rel. Hood, 974 So.2d 232, 240(¶ 14) (Miss.2008) (citation omitted).
¶ 20. The ordinance articulates no requirement that the food and beverages sold consist of only unprepared food. The ordinance is silent as to that issue; therefore, the question for this Court is whether the City's interpretation is based upon a permissible construction of the permitted zoning use. Id. (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Considerable weight should be accorded to the City to construe its ordinance, and permitted zoning uses, that the City enacted and is entrusted to administer. The Court possesses a duty to respect legitimate policy choices made by those with authority to make such choices. Id. (quoting Chevron, 467 U.S. at 844, 104 S.Ct. 2778). Moreover, the judiciary must also respect legitimate exercises of police power by a municipality.
¶ 21. Significantly, neither the permitted use, nor the scope of the permitted use, was changed, amended, or altered by the conditions articulated by the City. The permitted use was not enlarged or restricted and constitutes the same zoning permitted use applicable to land similarly situated. In other words, the use constitutes a conforming use within the plain text of the C-4-B zone's permitted uses without any amendment, further grant of authority, or expansion of the scope of the permitted use.
¶ 22. Moreover, the City imposed conditions on Harbor Landing to ensure that Harbor Landing's operations complied with the zoning ordinance. Conditions such as off-street parking restrictions constitute a proper application of the municipal police power and recognize the needs of contemporary society. See Stroud v. City of Aspen, 188 Colo. 1, 532 P.2d 720, 721 (1975) (citing Yates v. Mayor and Comm'rs of City of Jackson, 244 So.2d 724, 726 (Miss.1971)) (finding that generally, courts which have considered the issue of off-street parking ordinances have upheld them as proper applications of the municipal police power). Such an exercise of police power allows for adequate off-street parking and noise control and fails to constitute "spot zoning." A failure to comply with the enforcement conditions does not result in a change of the zoning classifications or zoned permitted uses. Yates, 244 So.2d at 726. The term "spot zoning" refers to instances where a zoning ordinance is amended, thereby reclassifying one or more tracts or lots for uses prohibited by and out of harmony with the original zoning ordinance. City of Jackson v. Ridgway, 261 So.2d 458, 459 (Miss.1972). Whether such an amendment will be held to be void depends on the circumstances of each case. Id. In the case at bar, the conditions do not constitute an amendment to the underlying zoning ordinance; rather, they constitute conditions falling within the municipality's police powers to enforce the zoned permitted use. In this case, Harbor Landing has not complained that the conditions limiting parking and noise are void as an overreaching of police powers or that they unduly restrict their operations within the zoned permitted use.
¶ 23. I agree with the City's contention that the conditions set forth by the City merely reflect the City's enforcement of its zoning ordinance, and interpretation of the zoning ordinance falls within the City's executive enforcement powers to ensure the conforming use indeed remains conforming. See Miss.Code Ann. §§ 17-1-5 and 17-1-19 (Rev.2003). The City enjoys the express grant of broad enforcement authority as set forth in section 17-1-19. In accordance with that broad grant of *411 authority, to ensure compliance with zoning laws or ordinances, the municipality may institute any appropriate action or proceedings in addition to other remedies. Id. The City may also write tickets and issue citations for violations of noise ordinances and parking violations.
¶ 24. In City of Hattiesburg v. L. & A. Contracting Co., 248 Miss. 346, 348, 159 So.2d 74, 74 (1963), the supreme court recognized a municipality's broad executive powers in enforcing its zoning ordinances. In that case, the supreme court explained that zoning statutes give the governing body of a municipality broad zoning powers in accordance with a comprehensive plan. Id. The supreme court recognized that a municipality may pursue injunctive relief to enforce zoning ordinances and is not limited to seeking a penalty against the violator. Id. at 350, 159 So.2d at 76. The court found that such authority existed, even though injunctive relief was not specifically authorized by statute. Id. The court found that the express grant of the broad enforcement powers set forth in Mississippi Code 1942, § 3596 allowed the City of Hattiesburg to pursue injunctive relief. Id.
¶ 25. In City of Houston v. Tri-Lakes, Ltd., 681 So.2d 104, 110 (Miss.1996), the supreme court found that a zoning ordinance which made the enforcement of zoning the sole province of the zoning administrator, and not the local city government, was not inconsistent with the broad grant of enforcement powers under section 17-1-19, even though the authority to delegate this authority was not expressly set forth in the statute. In the case at bar, the City simply exercised its enforcement via police powers and interpreted its own ordinance. Such action is not contrary to or inconsistent with the broad grant of enforcement powers set forth in section 17-1-19 or the zoning permitted use in the present case.
¶ 26. In conclusion, I find the City's interpretation of its own zoning ordinance, that the deli at issue fell within the permitted use of the property, constitutes a reasonable interpretation based upon the plain text of the aforementioned ordinance. The City, in my view, interpreted the deli foods offered by Harbor Landing as falling within the definition of "beverages and food" under the zoning ordinance. Therefore, I must respectfully dissent as to the analysis and findings of the majority opinion. This Court has held that "[m]unicipal ordinances and regulations must be reasonable[;] otherwise[,] they will be void and unenforceable, and the question of their reasonableness is a judicial question." Hearne v. City of Brookhaven, 822 So.2d 999, 1005(¶ 24) (Miss.Ct.App.2002) (citing Jones v. City of Hattiesburg, 207 Miss. 491, 496, 42 So.2d 717, 718 (1949)). In the case at bar, in the marina zone, the use of buildings, other structures, and the land is restricted as follows:
Yacht clubs, sale or service and supplies including beverages and food for boats and watercraft which use the small craft harbor. Specifically prohibited are: All types of commercial marine ways, repair shops or any type of industrial activity.
(Emphasis added).
¶ 27. I respectfully submit that the City was reasonable in its interpretation that Harbor Landing's deli offerings fall within the scope of beverages and food for boats and watercraft using the small-craft harbor. Therefore, I would affirm the judgment of the circuit court, which affirmed the City's decision to allow Harbor Landing to offer food and beverage services.
NOTES
[1] Contrary to the dissent's argument, the record shows that whether the hot food proposed by Harbor Landing actually constituted "food" under the ordinance was never at issue. Rather, the opponents of the proposal argued that the hot food was intended to be served to the general public, not solely to the boating public as the ordinance requires. Their concerns included greater noise and congestion due to patrons driving and parking vehicles in the limited area of the harbor as opposed to arriving by boat.
[2] The City's attorney, in a memorandum to the Board, stated the following about the limited marina district:

Upon review of Section 409 of the City of Ocean Springs Zoning Ordinance, I could find no language where a special exception or special use could be provided. A review of past City minutes indicates that in January of 2005 language similar to that found in other districts that would allow for special exceptions was tabled by the Board and not taken up or enacted into an ordinance. Therefore, what comes before the Board is whether or not this Board makes a finding of fact based on the evidence presented by Mr. Harris that his proposal has a primary intended use as "sale or serve and supplies including beverages and food for boats and watercraft which use the Small[-]Craft Harbor."
[3] The American Heritage Dictionary of the English Language defines "food" as follows: (1) Material, usually of plant or animal origin, that contains or consists of essential body nutrients, such as carbohydrates, fats, proteins, vitamins, or minerals, and is ingested and assimilated by an organism to produce energy, stimulate growth, and maintain life. (2) A specified kind of nourishment: breakfast food; plant food. (3) Nourishment eaten in solid form: food and drink.