CARLTON, J.,
DISSENTING:
¶ 17. Po-boys and gumbo constitute types of food.[3] Therefore, I must respectfully dissent and submit that the City of Ocean Springs’ (“the City”) interpretation of the zoning ordinance was logically based on the plain language of the ordinance. I agree with the City’s position that it was merely interpreting its zoning ordinance.
¶ 18. In this case, the City determined the intended use qualified under the ordinance as a permitted use in the C-4-B zone at issue. This C-4-B zone permitted use allows, on its face, services and supplies, including food and beverages, for boats and watercraft that use the small-craft harbor. Hence, the food Harbor Landing proposed to sell clearly falls within this plain language of the permitted use.
¶ 19. In my view, the conditions set forth by the City provided parameters to ensure the deli operated within the scope of the permitted use. In defense of these conditions, the City explained that, as stated above, it was merely interpreting the language of its own zoning ordinance, and I agree with that assessment. Execution *410 and enforcement is, after all, at the core of executive power. Barbour v. State ex rel. Hood, 974 So.2d 232, 240(¶ 14) (Miss.2008) (citation omitted).
¶20. The ordinance articulates no requirement that the food and beverages sold consist of only unprepared food. The ordinance is silent as to that issue; therefore, the question for this Court is whether the City’s interpretation is based upon a permissible construction of the permitted zoning use. Id. (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Considerable weight should be accorded to the City to construe its ordinance, and permitted zoning uses, that the City enacted and is entrusted to administer. The Court possesses a duty to respect legitimate policy choices made by those with authority to make such choices. Id. (quoting Chevron, 467 U.S. at 844, 104 S.Ct. 2778). Moreover, the judiciary must also respect legitimate exercises of police power by a municipality.
¶ 21. Significantly, neither the permitted use, nor the scope of the permitted use, was changed, amended, or altered by the conditions articulated by the City. The permitted use was not enlarged or restricted and constitutes the same zoning permitted use applicable to land similarly situated. In other words, the use constitutes a conforming use within the plain text of the C^-B zone’s permitted uses without any amendment, further grant of authority, or expansion of the scope of the permitted use.
¶ 22. Moreover, the City imposed conditions on Harbor Landing to ensure that Harbor Landing’s operations complied with the zoning ordinance. Conditions such as off-street parking restrictions constitute a proper application of the municipal police power and recognize the needs of contemporary society. See Stroud v. City of Aspen, 188 Colo. 1, 532 P.2d 720, 721 (1975) (citing Yates v. Mayor and Comm’rs of City of Jackson, 244 So.2d 724, 726 (Miss.1971)) (finding that generally, courts which have considered the issue of off-street parking ordinances have upheld them as proper applications of the municipal police power). Such an exercise of police power allows for adequate off-street parking and noise control and fails to constitute “spot zoning.” A failure to comply with the enforcement conditions does not result in a change of the zoning classifications or zoned permitted uses. Yates, 244 So.2d at 726. The term “spot zoning” refers to instances where a zoning ordinance is amended, thereby reclassifying one or more tracts or lots for uses prohibited by and out of harmony with the original zoning ordinance. City of Jackson v. Ridgway, 261 So.2d 458, 459 (Miss.1972). Whether such an amendment will be held to be void depends on the circumstances of each case. Id. In the case at bar, the conditions do not constitute an amendment to the underlying zoning ordinance; rather, they constitute conditions falling within the municipality’s police powers to enforce the zoned permitted use. In this case, Harbor Landing has not complained that the conditions limiting parking and noise are void as an overreaching of police powers or that they unduly restrict their operations within the zoned permitted use.
¶ 23. I agree with the City’s contention that the conditions set forth by the City merely reflect the City’s enforcement of its zoning ordinance, and interpretation of the zoning ordinance falls within the City’s executive enforcement powers to ensure the conforming use indeed remains conforming. See Miss.Code Ann. §§ 17-1-5 and 17-1-19 (Rev.2003). The City enjoys the express grant of broad enforcement authority as set forth in section 17-1-19. In accordance with that broad grant of *411 authority, to ensure compliance with zoning laws or ordinances, the municipality may institute any appropriate action or proceedings in addition to other remedies. Id. The City may also write tickets and issue citations for violations of noise ordinances and parking violations.
¶ 24. In City of Hattiesburg v. L. & A. Contracting Co., 248 Miss. 346, 348, 159 So.2d 74, 74 (1963), the supreme court recognized a municipality’s broad executive powers in enforcing its zoning ordinances. In that case, the supreme court explained that zoning statutes give the governing body of a municipality broad zoning powers in accordance with a comprehensive plan. Id. The supreme court recognized that a municipality may pursue injunctive relief to enforce zoning ordinances and is not limited to seeking a penalty against the violator. Id. at 350, 159 So.2d at 76. The court found that such authority existed, even though injunc-tive relief was not specifically authorized by statute. Id. The court found that the express grant of the broad enforcement powers set forth in Mississippi Code 1942, § 3596 allowed the City of Hattiesburg to pursue injunctive relief. Id.
¶ 25. In City of Houston v. Tri-Lakes, Ltd., 681 So.2d 104, 110 (Miss.1996), the supreme court found that a zoning ordinance which made the enforcement of zoning the sole province of the zoning administrator, and not the local city government, was not inconsistent with the broad grant of enforcement powers under section 17-1-19, even though the authority to delegate this authority was not expressly set forth in the statute. In the case at bar, the City simply exercised its enforcement via police powers and interpreted its own ordinance. Such action is not contrary to or inconsistent with the broad grant of enforcement powers set forth in section 17-1-19 or the zoning permitted use in the present case.
¶ 26. In conclusion, I find the City’s interpretation of its own zoning ordinance, that the deli at issue fell within the permitted use of the property, constitutes a reasonable interpretation based upon the plain text of the aforementioned ordinance. The City, in my view, interpreted the deli foods offered by Harbor Landing as falling within the definition of “beverages and food” under the zoning ordinance. Therefore, I must respectfully dissent as to the analysis and findings of the majority opinion. This Court has held that “[m]unicipal ordinances and regulations must be reasonable^] otherwise[,] they will be void and unenforceable, and the question of their reasonableness is a judicial question.” Hearne v. City of Brookhaven, 822 So.2d 999, 1005(¶ 24) (Miss.Ct.App.2002) (citing Jones v. City of Hattiesburg, 207 Miss. 491, 496, 42 So.2d 717, 718 (1949)). In the case at bar, in the marina zone, the use of buildings, other structures, and the land is restricted as follows:
Yacht clubs, sale or service and supplies including beverages and food for boats and watercraft which use the small craft harbor. Specifically prohibited are: All types of commercial marine ways, repair shops or any type of industrial activity.
(Emphasis added).
¶ 27. I respectfully submit that the City was reasonable in its interpretation that Harbor Landing’s deli offerings fall within the scope of beverages and food for boats and watercraft using the small-craft harbor. Therefore, I would affirm the judgment of the circuit court, which affirmed the City’s decision to allow Harbor Landing to offer food and beverage services.

. The American Heritage Dictionary of the English Language defines "food” as follows: (1) Material, usually of plant or animal origin, that contains or consists of essential body nutrients, such as carbohydrates, fats, proteins, vitamins, or minerals, and is ingested and assimilated by an organism to produce energy, stimulate growth, and maintain life. (2) A specified kind of nourishment: breakfast food; plant food. (3) Nourishment eaten in solid form: food and drink.